SOUTHERN EXPRESS COMPANY *v.* WM. M. THORNTON.

1. EVIDENCE: HANDWRITING: KNOWLEDGE OF, MAY BE ACQUIRED BY BUSINESS CORRESPONDENCE.—A witness will be permitted to testify as to the handwriting of a third person, if he has received letters on business which can be proven to have been written by the party, or if the letters are of such a character as make it probable they were written by the hand from which they profess to come.

2. INSTRUCTIONS TO JURY: IMPROPER TO INSTRUCT AS TO THE WEIGHT OF EVIDENCE: CASE IN JUDGMENT.—The court below instructed the jury, " That the letter of the superintendent of the Southern Express Company, appointing Neely, as agent, to investigate the loss of the money, is a circumstance which the jury may consider to enable them to determine whether said company received said money." Held—That this was not an instruction as to the weight of evidence, but left it to the jury to determine what weight and consideration they would give to the testimony.

3. COMMON CARRIERS: EXPRESS COMPANIES; LIABILITY OF, WHERE THEY ASSUME THE OBLIGATIONS OF ANOTHER COMPANY.—Where an express

Southern Express Co. v. Thornton.

company transfers all its effects to another company, which assumes the obligations of the former, the latter will be liable as a common carrier to a third person, who had previously contracted with the former for the carrying and delivery of goods.

4. COMMON CARRIERS: EXPRESS COMPANIES: LIABILITY OF, TO CARRY AND DELIVER MONEY RECEIVED WITHOUT ANY EXPRESS CONTRACT.—An express company which receives from another company money of a third person, without any express contract to carry and deliver the same, will be liable to such third person for "money had and received," if they fail to account for or deliver the money.

5. COMMON CARRIERS: EXPRESS COMPANIES; LIABILITY OF, WHERE GOODS TRANSPORTED BY DIFFERENT COMPANIES.—Express companies which receive from other companies goods which the latter have contracted to carry and deliver, thereby incur the liabilities of a common carrier to the owner of the goods, and he, in the event of loss, has his election either to proceed against the company to which the goods were delivered, or against the one that received them. *Merchants' Bank of Boston* v. *New Jersey Steam Company*, 7 How. U. S.

ERROR to the Circuit Court of Rankin county. Hon. Jno. Watts, judge.

*W.* and *J. R. Yerger*, for plaintiffs in error, contended:

1. That the third and fourth instructions to the jury, given at the instance of defendant in error, were instructions as to the weight of evidence, and therefore erroneous. Rev. Code, 504, art. 161.

2. That the first and second instructions asked by plaintiffs in error were improperly refused. That if the action was in trover, or a suit for damages, whatever party committed the wrong would be liable to the injured party; but the suit is for a violation of contract.

In a contract of mutual promises, both parties must be bound at one and the same time or neither will be. *Livingston* v. *Rogers*, 1 Caines, 583; *Tucker* v. *Woods*, 12 Johns. 189; *Keep* v. *Hole*, 12 ib. 397.

A stranger to the consideration upon which a contract is founded cannot maintain an action on the contract. Addison on Contracts, 940; *Price* v. *Easton*, 4 B. & Ad. 434.

3. Cited Parsons on Contracts, 217, 222, and contended that

the Commercial Express Company was alone liable to defendant in error.

*Harper* and *Shelby*, for defendant in error, cited *Neal* v. *Saunderson*, 2 S. & M. 572; Story on Bailments, §§ 494 et seq.; 2 Parsons' Contracts, 158, 163.

HANDY, C.J., delivered the opinion of the court.

The defendant in error sued the plaintiff in this action to recover five hundred dollars, and the declaration contains two counts: the first charges the company, as a common carrier, for the failure to deliver to McNair & Gardes, at the city of New Orleans, five hundred dollars, received at Jackson, Missisippi, and which they undertook and agreed to deliver; the second count is for money had and received. To this, the general issue was pleaded.

On the trial, the plaintiff below introduced as a witness Lamb, who testified, in substance, that on or about 3d of February, 1866, the plaintiff placed in his hands, as agent of the Commercial Express Company, to be forwarded, one five hundred dollar bill, in an open envelope, directed to McNair & Gardes, New Orleans, and witness placed said bill in said envelope and sealed it, placing five seals on it, and impressing witness's private seal, which was letter L, on each of the seals, and delivered the same to the agent of the Commercial Express Company, Caskie, at Brandon depot. Witness was shown an envelope and identified it as the same in which the five hundred dollar bill had been enclosed, but stated that the seals then on the envelope were not the seals he had placed there. The following letter was then shown to witness:

"No. 28. SOUTHERN EXPRESS COMPANY, EXPRESS FORWARDERS,
"NEW ORLEANS, February 16, 1866.

"MESSRS. MAYERS & LOWRY—Gentlemen: I have written our Mr. Neely to call at Brandon and with you investigate this matter. The package was not shipped by this company, but was transferred to us by the Commercial at Jackson, as I now

understand. I request that you will not let any of the parties, Thornton, Lamb, or any other, see the envelope, or let them know you have it until Mr. Neely arrives, and you consult with him, as our object is to find out, if possible, where the money went, and who is to blame in this matter.

           " Respectfully,        A. B. SMALL, Sup't."

And the witness stated that he had never seen said Small write his name; but, as agent of the Southern Express Co., as witness was, witness had received many letters from him, and had written replies to those letters, and witness believed that the signature to the letter shown to him was the same as that to the letters received by witness from him. He further stated that Small was superintendent of the Southern Express Co. at the date of this letter. The defendant objected to the reading of the letter, but the objection was overruled and the letter was read to the jury, the defendant excepting.

The witness further testified that he knew Neely, named in said letter, as agent of the Southern Express Co.; that he was at Brandon soon after the date of that letter, investigating the facts connected with the remittance of said money, and that plaintiff, after the investigation, sent to witness, as agent of the Southern Express Co., another $500 to be forwarded to McNair & Gardes in place of the former; but this last sum witness returned to plaintiff before it left the office, by direction of said Neely, agent of the company.

Also Caskie, who testified that on the 3d of February, 1866, he was a messenger on the Commercial Express Co., and, on that day, received a sealed package at Brandon depot from Lamb, the agent, which was marked as containing $500, directed to McNair & Gardes, New Orleans; that witness put the same in his tin box on the cars, locked the same up in the safe and conveyed it to Jackson; that when witness reached Jackson he found that the Commercial had sold out to the Southern Express Co., and witness was ordered to turn over all the Commercial packages to the Southern Express, which he did, including the package in controversy, and the same was received

and receipted for by the latter, and witness knows nothing as to what was subsequently done with the package; that he did not know whether the original seals were on it when it was turned over at Jackson; that the Commercial was merged in the Southern Express Co. on the day he received the package, or the day before; that the package was turned over to the Southern Express Co. as it was received by witness from Lamb; that the Southern Express Co. had bought out the Commercial and assumed all its liabilities, and all its packages were turned over.

The plaintiff then testified as a witness that he delivered the envelope with a $500 bill, United States currency, to Lamb, agent of the Commercial Express, on the 3d of February, 1866, to be forwarded to McNair & Gardes, New Orleans, and witness directed the envelope himself and wrote on it "by Commercial Express;" that McNair & Gardes deny having received the $500, and would not credit witness therefor; that witness employed Mayers & Lowry, attorneys, to recover the money; and afterwards, in February, 1866, one Neely, professing to be agent for the Southern Express Co., came to Brandon, and called on witness and acknowledged the receipt of the money by the Southern Express Co., and said the company would make the loss good, and that witness need not have any uneasiness about the matter; that whilst Neely was there, witness sent to Lamb, as agent of the Southern Express Co., another sum of $500, to be sent to McNair & Gardes in lieu of the money previously sent; but this last sum was returned to witness by Lamb, before forwarding it, by the direction of Neely; that witness did not know of his own knowledge that the first $500 did not reach McNair & Gardes, but was always so informed by them, and Neely did not deny that the money had been lost whilst in the possession of defendant; that witness has since paid McNair & Gardes the $500 which the first remittance was intended to pay; that the defendant had never paid witness the $500, and witness did not know how the money was lost.

Also General Lowry, who testified that Mayers & Lowry were engaged by the plaintiff, in February, 1866, to recover the $500,

and that soon thereafter they received from the Southern Express Company an express-envelope, containing the identical envelope now produced in court, in which Lamb had enclosed and sealed the $500 bill which plaintiff had delivered to him, as above stated by other witnesses, and containing also the same letter from A. B. Small to Mayers & Lowry above copied in Lamb's testimony; that soon after that letter and enclosure were received, one Neely appeared at Brandon, as agent for the defendant, to investigate the alleged loss, and witness conferred with him as such, but no adjustment was concluded with him.

On this testimony a verdict was rendered for the plaintiff, and the defendant entered a motion for a new trial on various grounds. This motion was overruled and the defendant excepted, and brings the case here by writ of error.

1. The first error assigned is, that the letter of Small set forth in the testimony of the witness Lamb was admitted in evidence, against the objection of the plaintiff in error, without proper proof of the handwriting of the person by whom it purported to be written.

The testimony on which the letter was admitted in evidence was, in substance, that Small was the superintendent of the Southern Express Company at the date of the letter, and that the witness was agent of the company at Brandon, and as such had received many letters from him about the business of the company, and had written in reply to those letters, and that he believed the letter produced was in the same signature as those received by witness from him.

It appears that the witness's knowledge of the party's handwriting was acquired through correspondence carried on between them in relation to the business of the company, in which they were both engaged. This brings it fully within the rule, admitting such proof of handwriting, which is thus stated by Phillips: "If a witness has received letters on subjects of business, which can be proved to have been written by a particular person, or letters of such a nature as make it probable that they were written by the hand from which they profess to come, he may be permitted to speak of that person's handwriting." 2

Phillip's Evid. 599 (4th Amer. edit. with Cowen & Hill's notes, by Edwards). And the cases cited in the notes in that work fully sustain the sufficiency of the proof of handwriting here.

But if this testimony had been insufficient to prove the hand-writing, there is other evidence in the case which clearly establishes the authenticity of the letter ; and as this case is brought up on a motion for a new trial overruled, the judgment would not be reversed on isolated exceptions taken on the ground that the proof introduced upon the point of handwriting was insufficient, where it appears from other evidence that the paper introduced was authentic. It appears by the testimony of the witness Lamb, given after the introduction of the letter, and likewise by the testimony of Lowry, that Neely came to Brandon shortly after the date of the letter, as the agent of the defendant, to attend to the matter of the lost money, as the letter stated he was requested to do. And that fact, added to the other testimony of Lamb, would remove all doubt as to the genuineness of the letter.

2. It is insisted that there is error in the second and fourth instructions given at the instance of the defendant in error.

The second instruction is as follows : " That the letter of the superintendent of the Southern Express Company, appointing Neely an agent to investigate the loss of the money, is a circumstance which the jury may consider, to enable them to determine whether or not said company received said money; and if they believe from the evidence said company received said money, and the same was lost by them, then they are liable to Thornton, and they must find for him."

It is objected that this instructs the jury as to the weight of evidence; but it is clearly not of that character. It is, in substance, no more than a statement, that the letter was competent evidence before them, to which they might give such weight as they considered it entitled to, in determining whether or not the money was received by the defendant. The letter, with its accompanying circumstances, certainly was entitled to grave consideration upon the point stated. It referred in terms to the envelope in which the money was enclosed, and the witness

Lowry states that he received, enclosed with this letter, the same envelope in which Lamb had enclosed and sealed the $500 bill, which the plaintiff had delivered to Lamb. This went strongly to prove that the defendant received the money; for otherwise how did the company come into possession of the envelope in which it was enclosed and sealed by Lamb? The letter of the superintendent of the company, together with the envelope received by Lowry with it, were therefore very proper to be considered by the jury; and that is the substance of the instruction.

The fourth instruction is, " That if the jury believe from the evidence that the Southern Express Co. received the package of $500, and that it afterwards sent the envelope to Brandon without the money in it, that is a circumstance from which the jury may infer that the contents were abstracted from the envelope while in the possession of the company."

This is likewise objected to as being an instruction on the weight of evidence. But if the jury believed the facts stated in it, it was impossible to avoid the conclusion that the defendant was liable. These facts were vital to the case, to wit, that the *defendant received the money* and afterwards sent the envelope containing it to Brandon without the money. If the court had instructed the jury that if they believed them, they should find for the plaintiff, it would not have been objectionable; because these facts, if true, were decisive of the case. Much less was it objectionable to direct them, that if they believed these facts, they *might infer* that the money was abstracted from the envelope while in the defendant's possession; for that conclusion was unavoidable.

3. The next error assigned is the refusal of the first and second instructions asked by the defendant.

The first is, " If the jury believe from the evidence that the money in controversy was delivered to the Commercial Express Company to be carried to New Orleans, and that there was no contract between the plaintiff and the Southern Express Company, then the express company is not liable to this action."

The evidence shows, that upon the transfer of the effects of

the Commercial Express to the defendant, the latter *assumed* all the liabilities of the former; which included the obligation to the plaintiff in this action.    This rendered the defendant liable to the plaintiff for the carrying and delivery of the money, without any express contract between them to that effect.    And in this view, the defendant was liable as a common carrier under the first count in the declaration.

But if there was no assumption of the liability of the Commercial Express Company, and no express contract directly between the plaintiff and defendant, the defendant was liable. under the second count in the declaration, for money had and received, if the money came to the hands of the defendant and was not delivered or accounted for.    In either of these views, the instruction was properly refused.

The second instruction is, " If the plaintiff sent the money by the Commercial Express, and that company transferred the same to the Southern Express Company, then the Commercial Express Company is alone liable to the plaintiff, and the Southern Express Company would be liable to the Commercial."

This instruction was erroneous for the reasons stated above in relation to the first instruction.    But under the state of case presented in it, for aught that is stated in it, the receipt of the money at Jackson by the defendant created an obligation on the part of the Southern Express Company, as a common carrier, and the plaintiff had his election to proceed either upon the obligation of that company or upon that of the Commercial Express Company.    *Merchants' Bank of Boston* v. *New Jersey Steam Navigation Company*, 6 Howard (U. S.)    But if this were not so, the plaintiff clearly had the right to proceed against the Southern Express Company, and to recover under the second count in the declaration for money had and received.

In any point of view, the instruction was erroneous under the evidence, and was properly refused.

Other errors are assigned, but have been waived in the argument.    The judgment must be affirmed.