**[No. 1361.]**

THE HELVETIA SWISS FIRE INSURANCE CO. V. THE EDWARD P. ALLIS CO.

</div>

1. FOREIGN CORPORATION—CONTRACTS—RIGHT TO SUE.

Sections 261 and 262, Gen. Stats. (Mills' Ann. Stats. secs. 500 and 501) requiring every foreign corporation to file in the office of the secretary of state a copy of its charter, etc., and providing that a failure so to do shall render its officers, agents and stockholders liable on all its contracts made in this state during its default, does not invalidate contracts of such corporation made in the state without having complied with the statute, nor affect the right of such corporation to sue upon any such contract.

2. PLEADING—EXHIBITS.

A policy of insurance attached to a complaint and referred to in the complaint as part of it, cannot be considered as a part of the complaint, nor consulted in determining whether or not a cause of action is stated. The complaint must state a cause of action without regard to exhibits whether they be attached or not.

3. PRACTICE—INSURANCE POLICY—BREACH OF CONDITION.

In an action on an insurance policy if the defendant relies on the breach of a condition in the policy as a defense, the condition and the facts constituting its breach should be set forth in the answer.

4. INSURANCE POLICY—FALSE REPRESENTATIONS.

In an action on an insurance policy, where the defendant answered by alleging that the policy was obtained by false representation of ownership fraudulently made by the assured, to sustain such allegation, it must appear not only that the representation was made, but that it was false and was made by the assured with knowledge of its falsity.

5. SAME.

In an action on an insurance policy where the evidence was to the effect that the assured had taken out a policy in the name of himself and company, at the time referring to another party as his partner, and afterwards upon application for additional insurance stated that the former policy ought to have been written to him alone, and with the consent of the insurance company transferred the policy to himself, stating that " he owned the entire property, mines and all, that he had got tired of fooling around with other people, that he had to pay all the money out and everything of that kind, and was going to have the whole business," *held*, insufficient to show a false and fraudulent representation of sole ownership.

6. INSURANCE—PROOF OF LOSS—WAIVER.

The condition in an insurance policy requiring the assured in case of fire to furnish the company with a written verified statement of the loss may be waived by acts of the insurer, which evidence a recognition of the liability and an effort to adjust the loss without such proof, or by a denial of liability for other reasons.

7. SAME.

Where there is no conflict in the evidence the question as to whether or not there was a waiver of the condition of proof of loss in an insurance policy is one of law for the court to determine.

8. SAME.

In an action on an insurance policy where the evidence showed that immediately after the fire the assured notified the general agent of the insurer, and that the agent visited the premises, and proposed an arbitration to determine the amount of the loss, which being declined by the assured, the agent sent a party to make and report an estimate of the damage which was done, that the agent had frequent conversations with the assured about the matter, but never indicated to the assured that any proof of loss was necessary or desired, *held*, that the action of the agent of the company was a waiver of the condition requiring proof of loss.

9. SAME.

In an action on an insurance policy if the defendant answers denying

liability, placing the defense upon other grounds than a failure by the assured to furnish proof of loss, it is a waiver of the condition requiring proof.

**10. INSURABLE INTEREST.**

An insurable interest in property does not depend upon the completeness or validity of the title by which the property is held. A limited or qualified interest is enough. If one has such interest in the property that in case of its destruction he will suffer a loss, he has an insurable interest. And he may describe the property as his and himself as the owner.

**11. SAME—EVIDENCE.**

In an action on an insurance policy covering a mill and machinery, there was evidence that the assured acquired an ownership in the property by agreement with the parties who projected the enterprise, in consideration of money advanced for the building and machinery; and it tended to show that he was the sole owner of the machinery, and was in possession and claiming sole ownership of the mill, though his right to the mill building was disputed. *Held*, that he had an insurable interest in the property.

**12. INSTRUCTIONS.**

Although an instruction may be unnecessary and superfluous, yet if it could do the complaining party no harm it is not a valid ground of complaint.

**13. INSTRUCTIONS—EVIDENCE—FRAUD.**

In the absence of evidence tending to establish fraud, and to connect the plaintiff with it, it was proper to refuse an instruction requested by defendant defining to the jury how fraud may be proven.

**14. SAME.**

In an action on an insurance policy, although the evidence may tend to prove that a third party burned the property, if it fails to connect the assured with the act, it is proper to refuse an instruction based upon assured's connection therewith.

*Appeal from the District Court of Arapahoe County.*

Messrs. OSBORN & GIBBS and Messrs. Van Ness & REDMAN, for appellant.

Mr. R. D. THOMPSON and Mr. J. A. DEWEESE, for appellee.

THOMSON, P. J., delivered the opinion of the court.

This is an action on a policy of insurance of a stamp mill and machinery, against loss or damage by fire. The complaint

averred that the plaintiff, the Edward P. Allis Company, was a corporation existing by virtue of the laws of the state of Wisconsin; it alleged the issuance of the policy by the defendant, the Helvetia Swiss Fire Insurance Company, to J. A. McIntyre; the payment by him of the premium; the destruction of the property insured, by fire; notice of the loss to the defendant; compliance by McIntyre and his assignee, the plaintiff, with the terms and conditions of the policy, except the condition concerning proof of loss, compliance with which it was alleged was waived by the defendant; an insurable interest in the insured in excess of all insurance on the property; the assignment of the contract of insurance by McIntyre to the plaintiff; and the failure of the defendant to pay the amount of insurance specified in the policy, or any part of such amount. Attached to the complaint was the policy sued on, to which the complaint referred as being a part of it.

The answer denied the capacity of the plaintiff to maintain the action, because, as a foreign corporation, it had not filed in the office of the secretary of state the certificate required by law; admitted the issuance of the policy as stated in the complaint; admitted the receipt of notice of the loss; admitted the assignment of the policy; and denied that the terms and conditions of the policy had been complied with, or that the defendant had waived the production of proof of loss, or that the value of the property was greater than the insurance, or that at the time of the issuance of the policy, or of the loss, McIntyre had an insurable interest in the property. Further, the answer averred that at the time of the issuance of the policy, McIntyre falsely and fraudulently concealed and misrepresented the facts concerning the ownership of the property, by representing that he was its sole and unconditional owner, whereas he was not its owner, and had no insurable interest or title in it; and alleged that any interest which he might have had in the property previous to, or at the time of, the issuance of the policy, had been forfeited before the destruction of the property by fire; that if the defendant had

been apprised of the facts as they were, it would not have issued the policy; that a gold stamp mill, which was part of the property insured, had been shut down for more than ten consecutive days next preceding the fire; that no proof of loss was made by McIntyre or the plaintiff as required by the conditions of the policy, nor was such proof waived by the defendant; and that in pursuance of a conspiracy between McIntyre and one Miller to cheat and defraud the defendant of the insurance money, and at the request, and by the procurement, of McIntyre, Miller willfully and maliciously set fire to and destroyed the property. The replication denied the averments of the answer, and set forth the particular facts relied upon as constituting waiver of proof of loss. The trial resulted in a verdict and judgment for the plaintiff for the amount claimed, and the defendant appealed.

It is contended in behalf of the defendant that by reason of the failure of the plaintiff to comply with the statutory requirements concerning foreign corporations doing business in this state, it had no capacity to sue, and that it therefore cannot maintain this action. It appears from the evidence that McIntyre was indebted to the plaintiff for some mining machinery which it had sold to him, and that the policy was assigned to it to secure the indebtedness; and counsel further contend that therefore it was doing business in this state in contravention of the statute, and that the fact that its cause of action grew out of the business so done, is an additional reason why this suit cannot be maintained. If the question which counsel seek to raise, fairly arises upon the statute, it has been set at rest by a series of adjudications. Whether the transactions between McIntyre and the plaintiff amounted to a doing of business in this state within the prohibition of the statute, we are unable to judge from the evidence; but it is unnecessary to decide the question. The statute makes it the duty of every corporation organized outside of this state and doing business within it, to file in the office of the secretary of state a copy of its charter, or certificate of incorporation, and of the corporation law under which it was

organized; and provides that a failure so to do shall render its officers, agents and stockholders, jointly and severally liable on all its contracts made in this state during its default. General Statutes, secs. 261, 262. There is no provision that the contracts of a corporation which has failed of compliance with the law, shall be avoided; on the contrary, their validity is recognized, and they are enforceable not only against it, but against its officers, agents and stockholders; nor does the statute assume to deprive it of any remedy which it would otherwise have, upon its contracts, or for the protection of its property rights. No consequence is attached to the failure, except the subjecting of its officers, agents and stockholders to a personal liability on its contracts; and the courts cannot very well go further than the legislature has gone. We feel entirely safe in saying that there is nothing in the statute by which the plaintiff's capacity to sue, or its right to maintain its action to enforce its demand, is in any way affected. *Utley* v. *Clark-Gardner, L. M. Co.*, 4 Colo. 369; *Tabor* v. *Goss & Phillips Man'f'g Co.*, 11 Colo. 419; *Kindel* v. *Lith. Co.*, 19 Colo. 310.

The policy was filed with the complaint, and the complaint recited that the policy was part of it. Attached to the policy was a somewhat extensive list of conditions, among which was one that if the interest of the insured was other than the unconditional and sole ownership, the policy should be void. In respect to this condition it is argued that as the policy was made a part of the complaint, and as the complaint did not allege that the interest of McIntyre was an unconditional and sole ownership, but merely that the interest was an insurable interest, which might or might not be such ownership, a cause of action was not stated, and the complaint was bad.

The answer did not set forth the condition, or claim anything by reason of it. It did not seek to bring in question the nature of McIntyre's ownership, except in connection with an allegation that the defendant was induced to issue the policy by the false and fraudulent representations of McIntyre that he was the unconditional and sole owner. An issue upon

this allegation would not involve the condition, or bring it into the case. If the policy with its conditions was a constituent part of the complaint, we are not disposed to controvert the proposition of counsel that an allegation of unconditional and sole ownership in McIntyre was necessary, and that the complaint was bad without it. But was the policy, or anything it contained, or anything attached to it, a part of the complaint, or could it be made so by any statement or recital in the complaint? Section 49 of the code provides that the complaint shall contain, among other things, a statement of the facts constituting the cause of action, in ordinary and concise language, without unnecessary repetition. Therefore, whether a cause of action has been stated must be determined by an inspection of the allegations found in the complaint itself, and not by an examination and construction of outside papers or documents, whether attached to the complaint or not. It was never intended that courts should look into and interpret written instruments, executed by parties to the suit, or others, to discover what the pleader meant to allege. In *Buck v. Fischer*, 2 Colo. 182, before the adoption of the code, it was held by the supreme court that the allegations of a bill in equity must show a case without regard to the exhibits, because they could not be taken as part of it; and in *Brooks v. Paddock*, 6 Colo. 36, it was said by the same court, after the code that the averments of the complaint can alone be looked to in determining its sufficiency, that if it is defective for want of material allegations, it cannot be aided by reference to exhibits made a part of it; and that it must state a cause of action without regard to the exhibits. See also *Curry v. Lackey*, 35 Mo. 389; *Marshall v. Hamilton*, 41 Miss. 224; *Oh Chow v. Hallett*, 2 Sawyer, 259; *Penrose v. Pac. Mut. L. Ins. Co.*, 66 Fed. Rep. 253. A good cause of action appeared on the face of this complaint; and if the defendant intended to rely on a breach of any condition of the policy, the condition and the facts constituting its breach, should have been set forth in the answer.

The next question presented relates to the representations

alleged to have been made by McIntyre to the defendant's agent that he was the sole and unconditional owner of the property.    If McIntyre represented that he was the sole and unconditional owner of the property, and if the policy was issued in reliance on the representation, and if the representation was false, the plaintiff was not entitled to a recovery. If there was such a representation, we ought to be able to find it, or some trace of it, in the evidence.    Mr. McIntyre testified that Mr. Driscoll, the defendant's agent, solicited the risk with a considerable degree of persistency, but that the only question he ever asked concerning the mill was where it was located; and that the subject of title was never mentioned or alluded to.    The only other witness to the transaction was Mr. Driscoll, the man to whom the representation was made, if it was made at all; and we are unable to find in his testimony any statement of McIntyre that he was the sole and unconditional owner of the property, or any equivalent statement.

His testimony concerning what was said about the title, prefaced by a short narrative which he gave of events leading up to it, was briefly as follows : Previous to writing the policy in suit, a Mr. Morgan asked Mr. Driscoll to write insurance on this same stamp mill, directing him to see Mr. McIntyre, who was interested with him (Morgan) in the property, in relation to the matter.    Mr. Driscoll called on McIntyre, who ordered him to write $1,000 on the building, and $500 on the machinery, and directed the insurance to be written in the name of McIntyre & Co., saying that Morgan was a partner of his, and interested with him.    This insurance was written in the Atlas Insurance Company of which Driscoll was the agent.    Afterwards McIntyre applied to him for $2,000 additional insurance on the property, to be written in his own name, saying that the first policy should also have been so written.    The first policy was then assigned by McIntyre, for McIntyre & Co., to McIntyre personally, the insurance company indorsing on the policy its consent to the transfer.    When the additional $2,000 of insurance was writ-

ten, McIntyre said that "he owned the entire property, mines and all, that he had got tired of fooling around with other people, that he had to pay all the money out and everything of that kind, and was going to have the whole business." Respecting this testimony there are two observations to be made. First, the answer charges that McIntyre falsely and fraudulently concealed and misrepresented the facts concerning the title by representing that he was the sole and unconditional owner of the property. It is a representation and not a warranty that is averred, and the representation is alleged to have been made fraudulently. To sustain the allegation, it must appear not only that McIntyre represented himself as the sole and unconditional owner, but that the representation was false, and that he made it with knowledge of its falsity, with the intent to deceive the defendant. Now the statement of McIntyre was not that he was the sole and unconditional owner, or that there was no outside party claiming an interest in the property; and it is evident from his language that he was not endeavoring to convey the impression that he had an absolute title. He had previously informed Mr. Driscoll that Mr. Morgan was interested with him, and he did not now claim that he had received any transfer of Morgan's interest. He based his right to the property solely on the ground that he had been compelled to advance all the money in connection with it; and it seems clear from what he said that his notion was that what he had paid for ought to belong to him. He did not profess to give facts, but only conclusions which he had worked out as to his rights; what he meant by saying that he was the owner, was fully explained by his subsequent language; and no person of ordinary business intelligence would understand his statement to mean that he had a complete or indefeasible title. Second, the statement of Mr. McIntyre to which Mr. Driscoll testified, was made, if at all, when the additional $2,000 of insurance was written. The policy in suit is for $1,000. We are unable to find anything in the record to connect this policy with the insurance for $2,000, or to indicate that the defendant,

in issuing this policy, was influenced by the statement testified to, or any other statement. In our opinion the allegation concerning false representation was wholly unsupported by the evidence.

Another condition of the policy was that if a fire should occur the insured should give immediate notice of the loss in writing to the insurance company, and within sixty days after the fire, render a statement to the company, signed and sworn to by him, as to the time and origin of the fire, the interest of the insured, and all others, in the property, the amount of the loss, and some other matters of fact affecting the liability of the insurer. A day or two after the fire McIntyre notified Mr. McGrew, the defendant's general agent, of the loss. No objection is taken either to the manner or form of the notice, and there is no question concerning it in the case. The sworn statement was never rendered. The complaint admitted this, but alleged facts of waiver. The answer denied waiver, and we must resort to the evidence to see what it disclosed in relation to the question. The facts are not in dispute. The testimony of Mr. McIntyre and Mr. McGrew was all the evidence there was on the subject, and there was no disagreement between the witnesses. McGrew was the general agent of the defendant, and an adjuster of losses for it. Shortly after receiving the notice he took steps looking to an adjustment of this loss. He went to the scene of the fire, taking a Mr. Grant with him, and the two examined the ruins and came back to Denver. He then proposed to McIntyre that they each select a man, the two chosen, if necessary, to select a third, and that the men so selected should view the property and conclude as to the damage that had been sustained. McIntyre did not assent to the proposition. McGrew then, with the consent of McIntyre, sent a Mr. Cole, who had had something to do with the building of the mill and the placing of the machinery, to the scene of the fire, to examine the mill and machinery, and make figures as to what the amount of the damage was. Mr. Cole went and made an examination lasting several days. He returned, and furnished a written

report to Mr. McGrew of the condition of the property, together with an estimate of the cost of restoring the mill and machinery to a condition as good as they were in before the fire.    After receiving Mr. Cole's report, McGrew told McIntyre that everything appeared to be satisfactory.    This all occurred before the expiration of the sixty days within which proof of loss might be made.    During all this time McGrew was in frequent conversation and negotiation with McIntyre in respect to the loss and its adjustment.    He never suggested to McIntyre that the latter had failed to make the proof required by the condition in the policy, or called upon him for such proof, or suggested that the proof would be desirable. Apparently, he was undertaking to make an adjustment of the loss by means of a personal investigation of the facts, and by means of an examination which he caused to be made by another; and it is to be inferred from the method he pursued that he did not regard formal proof as necessary, or believe that it would be of any assistance to him.    So far as this record discloses, the objection of want of proof of loss was made for the first time in the defendant's answer.    The evidence being free from conflict, there was no question of fact for the jury to decide; and the question whether the production of the sworn statement was waived, is one of law.    *Towle v. Ins. Co.*, 91 Mich. 219.

Any person may preclude himself from insisting on a formal condition inserted for his benefit in a contract.    And it is not necessary that the waiver should be express.    It may be a legitimate deduction from his acts.    Upon the question, what acts of an insurance company, or its agents, will be evidence of waiver of performance of a condition annexed to a policy of insurance, there has been considerable adjudication; and the question has usually arisen, as it arises here, upon the neglect or failure of the insured to comply with the condition concerning proof of loss.    While the facts in no two cases are precisely similar, the general principle to be extracted from the decisions is that the waiver may be inferred either from acts of the insurers which evidence a recognition of their

liability, or from their denial of liability exclusively for other reasons.    *Insurance Association* v. *Mathews*, 65 Miss. 301; *Snowden* v. *Ins. Co.*, 122 Pa. St. 502; *Phillips* v. *Ins. Co.*, 14 Mo. 220; *Boyd* v. *Ins. Co.*, 70 Iowa, 325; *Ins. Co.* v. *Dierks*, 43 Neb. 473; *Ins. Co.* v. *Gracey*, 15 Colo. 70; Flanders on Fire Ins. 541.

Mr. McGrew's authority in the premises is unquestioned; and we think that his conduct with reference to the subject-matter of the loss will bear but one interpretation, and that is that formal proof of loss in accordance with the condition, was intended to be dispensed with.    Before the expiration of the time within which the proof was required, he took steps toward an adjustment of the loss; and after having viewed the property himself in connection with the person whom he took with him for the purpose, he proposed to Mr. McIntyre that the question of the amount of loss sustained should be submitted to arbitrators.    The question to be submitted was not whether the defendant was liable at all; but what the true amount was which it should be required to pay.    Upon the declination by Mr. McIntyre of this proposition, Mr. Mc-Grew, with the concurrence of Mr. McIntyre, sent Mr. Cole to the scene of the fire to make an examination, return a report of the condition of the property, and prepare an estimate of the amount of the damage.    After Mr. Cole had concluded the examination and made the report, Mr. McGrew informed Mr. McIntyre that everything appeaerd to be satisfactory.    He never indicated that any proof of loss by McIntyre was desired, but proceeded on a knowledge of the loss which he already possessed, and upon his own independent responsibility, to ascertain the extent of the damage done.    Mr. McGrew's conduct would naturally, and we think necessarily, produce the impression that proof of loss by McIntyre was not required. If McGrew was proceeding in good faith, and intended to settle the claim, the measures which he took to ascertain its amount, rendered other proof unnecessary; if he was not proceeding in good faith, then his conduct was misleading, and, we must presume, was intended to mislead.    In view of the

facts, as they appear in evidence, we do not think the defendant can be heard to say that proof of loss was not made.

But the defendant, in its answer, denied its liability on grounds entirely different from that of failure to make proof of loss. If the statements in its answer were true, McIntyre's entire claim was founded in falsehood and fraud, and it would have been entirely immaterial whether proof of loss was furnished or not; in no event was he entitled to a recovery. The placing of its defense on the ground that when the property was destroyed the policy was not in force, was in itself a waiver of the condition requiring proof of the loss by the insurer. In *Insurance Co. v. Dierks, supra,* the court said : " We do not mean to say, nor do we decide, that if a person insured shall neglect or refuse to give notice of a loss to the company in accordance with the requirements of the policy, that the insurance company can never urge the failure of the insured to give it notice of the loss, or his failure to furnish proofs of loss as a defense to a suit upon the policy ; but what we do decide is that when an insurance company is sued for a loss on a policy issued by it and places its defense to such suit on the ground that by reason of some act of the insured the policy was not in force at the date of the loss, that then in such action all issues made by the pleadings as to whether the insured gave notice of the loss, and whether he furnished the insurance company proofs of the loss, became immaterial."

The defendant having waived the condition that the interest of the insured must be the unconditional and sole ownership by not pleading it, and the issuance of the policy not having been induced by representations of any specified kind of title, if McIntyre had what is called an insurable interest in the property, he had a sufficient title to support the contract of insurance. An insurable interest does not depend upon the completeness or validity of the title by which the property is held. A limited or qualified interest is enough. Possession under a contract of sale, even if the conditions of the contract have been violated, so that if the breach be insisted upon, the contract cannot be enforced, is an insurable

interest; and so is a title which is voidable, but not void. A leasehold interest is insurable. A stockholder in an in- corporated company has an insurable interest in the cor- porate property; and, generally, if one has such an interest in the property that in case of its destruction he will suffer a loss, he has an insurable interest; and he may describe the property as his, and himself as the owner. *Gilman v. Ins. Co.*, 81 Me. 488; *Warren v. Ins. Co.*, 31 Iowa, 464; *Seaman v. Ins. Co.*, 18 Fed. Rep. 250; *Niblo v. Ins. Co.*, 1 Sandf. 551; *Ins. Co. v. Woodruff*, 2 Dutch. (N. J.) 541; *Ins. Co. v. Chase*, 5 Wall. 509; *Wich v. Ins. Co.*, 2 Colo. App. 484; 1 May on Insurance, §§ 87, 87 *a;* Flanders on Fire Ins. 342, 380.

The question whether McIntyre had an insurable interest in the stamp mill and machinery was submitted to the jury by proper instructions, and the jury found that he had. If the verdict was justified by any substantial proof, it cannot be interfered with. The defendant introduced a voluminous mass of evidence, showing a variety of transactions in relation to the property, the outcome of which, it is contended, was that the interest which McIntyre had had in the property, had been terminated. To review all the evidence would consume time, and occupy space, to no useful purpose. There was evidence that McIntyre acquired an ownership in the prop- erty, by agreement with the parties who projected the enter- prise, in consideration of advancements of money made by him for the building and machinery, and the payment of the debts of the concern; and it tended to show that he became the sole owner, at least of the machinery. It was also in evi- dence that his right to the mill building was disputed, and that steps were taken to compel him to surrender it. But it further appeared that he was in possession claiming sole own- ership; and it did not appear that any adverse claim was ever successfully asserted against him, or was ever recognized by him as having a valid existence, or that the question of his title in either mill or machinery had ever been judicially de- termined against him. Upon the evidence the jury might well find that he had an insurable interest in the property

within every definition of the term. Upon his own testimony his interest was such that even if he had stated to Driscoll, without qualification, that he was the owner, the statement would not have been, in law, a misrepresentation. The case went to the jury upon the evidence given, and their verdict is conclusive of the facts.

The objections to instructions are, for the most part, covered by what has already been said. A few observations will dispose of the remainder. It appears that one N. K. Miller at one time laid claim to the ground on which the mill was constructed, by virtue of a certificate of location to which his name was subscribed, and which had been recorded in the office of the recorder of deeds. The evidence showed that some years prior to the date of this certificate, one Edward J. Stephenson had located a placer claim which included the same ground, and had duly recorded his location certificate. Subsequently a lease for ninety-nine years of the ground constituting the mill site was executed by Mr. Stephenson and another, and there was evidence tending to show that Mr. McIntyre was the owner of that lease. Afterwards Mr. McIntyre and Mr. Miller entered into an agreement whereby the former made a lease of the property to the latter. During the trial, counsel for the defendant were insisting that Miller was the owner of the property, or at least of an interest in it. We deem this preliminary explanation necessary to an understanding of what the court had in mind when it gave the following instruction : " If you believe from the evidence that Nick K. Miller, about October 13, A. D. 1894, took a certain lease of that date, introduced in evidence in this case, from said McIntyre of the said mill insured by the policy sued upon in this action, in which he, Miller, acknowledged that McIntyre owned the said mill, then the court instructs you that the acceptance of said lease by said Miller raised a very strong presumption that said Miller had, prior to said October 12, 1894, relinquished to said McIntyre all interest that he ever had in said mill, and that said Miller recognized the ownership of the said McIntyre in the said mill, and unless

you believe from other evidence in this case that presumption has been clearly overcome and explained, you will find that, at the time of the said loss of the mill by fire, said Miller had no interest therein." This instruction is the subject of vigorous attack, but, when closely examined, it amounts to nothing more than a statement of the legal relation which a tenant sustains to his landlord. If Miller was McIntyre's tenant, he could not deny McIntyre's title; and if Miller had formerly been interested in the property, his acceptance of the lease from McIntyre was evidence that his interest had passed to McIntyre. In view of the other evidence in the case, we do not think that the instruction was necessary, or that it could have done the plaintiff any good, or the defendant any harm; but that it may have been superfluous without more, is not a valid ground of complaint.

The defendant requested instructions that fraud may be proved by circumstantial evidence, that parties guilty of fraudulent practices usually conceal their acts, and that, therefore, resort must be had to the facts and circumstances surrounding the transaction. Considered as an abstract proposition, the foregoing is sound, and accords moreover, with the general current of experience; but in order that it may be proper as an instruction, some fact or circumstance must be in evidence from which fraud might be legitimately inferred. We are unable to satisfy ourselves as to what particular conduct of the plaintiff these instructions were intended to apply; but we do not find in the record any fact or circumstance connected with the application for insurance, or with the loss, which indicates fraud. The court was also asked to instruct that if the jury should find from the evidence that McIntyre caused, procured, or assented to, the destruction of the property by fire, the verdict should be for the defendant. The defendant undertook to show that Miller was responsible for the fire; but even if we could say that it was conclusively established that the destruction was willfully caused by Miller, there was a fatal want of evidence that McIntyre was in any manner connected with, or cognizant of, his act.

Instructions not based on evidence are liable to be mislead-
ing, if nothing worse.   The giving of instructions in accord-
ance with the foregoing requests, would have had a tendency
to create a suspicion in the minds of the jury that the court
had detected something in the evidence from which it might
be inferred that McIntyre was guilty of some fraudulent prac-
tice which would vitiate the insurance, or of connivance in
the destruction of the property, and, in view of what the evi-
dence actually was, would have been gross error.   *Fisk v.
Electric Light Co.*, 3 Colo. App. 319.

The other instructions asked, were based on theories of
the case with which we have already disagreed, and, in our
opinion were properly refused.   We have not given separate
discussion to each of the numerous points made for the de-
fendant, but they have all been considered, and have all been
disposed of, in this opinion.   We find nothing in the entire
record to authorize a reversal, and we therefore order an
affirmance of the judgment.

*Affirmed.*