# MARY B. SHOLZ, Appellant, v. SARAH M. MILLS, Respondent.

### St. Louis Court of Appeals, July 5, 1913.

1. **ARBITRATION AND AWARD: Elements: Controversy: Appraisal.** A submission of a matter to a third person for settlement is an arbitration only where there has been a difference or controversy between the parties concerning such matter, prior to the submission; so that, where two parties enter into a contract respecting the sale or leasing of land, and leave the price or rent to be paid undetermined, agreeing that the value thereof shall be fixed by a third person to be selected and that they will be bound by such valuation, the valuation so fixed is an appraisal and not an arbitration, for the reason that there is no difference or controversy between the parties.

2. **APPRAISAL: Notice of Meeting of Appraisers.** Where two parties submit the matter of ascertaining the value of land to a third person, who, in discharging his functions, acts as a mere valuer and not as an arbitrator, they are not entitled to be notified of the meeting of the appraisers, inasmuch as the introduction of evidence and statements of parties or counsel are not contemplated, but the appraisers are expected to act upon their own knowledge and judgment.

3. **————: Arbitration and Award: Landlord and Tenant: Appraisal of Tenancy.** An appraisal of land under a lease providing that if the parties cannot agree upon the value of the land for the purpose of fixing the rent, each shall choose a person to make such valuation, and if the persons so chosen cannot agree, they shall choose a third person, and a decision of the majority shall be binding, is not technically an arbitration (following Holmes v. Shepard, 49 Mo. 600), and hence notice of the meeting of the appraisers cannot be required.

4. **APPELLATE PRACTICE: Supreme Court: Controlling Decision.** It is the duty of Courts of Appeals to follow the last decision of the Supreme Court in point, although such decision was *obiter.*

5. **APPRAISAL: Landlord and Tenant: Valuation of Tenancy.** Under a lease providing that if the parties cannot agree upon the value of land for the purpose of fixing the rent, each shall choose a person to make such valuation, but that if the landlord should fail to choose an appraiser, the sheriff was empowered to choose one for him, an appraisal could not be made by an appraiser appointed by the tenant and one appointed by

the sheriff, on the failure of the landlord to make such appointment, unless the landlord and tenant had disagreed as to the value of the land.

6. ———: ———: ———: **Action to Set Aside. Appraisal: Sufficiency of Evidence.** In an action in equity to set aside an appraisal of land under a lease providing that if the parties cannot agree upon the value of the land for the purpose of fixing the rent, each shall choose a person to make such valuation, but that if the landlord failed to choose an appraiser, the sheriff was empowered to choose one for him, evidence *held* to show that there was no disagreement between the landlord and the tenant as to the value of the land; and hence it is *held* that an appraisal made by an appraiser appointed by the tenant and one appointed by the sheriff, on the failure of the landlord to make such appointment, was void.

7. ———: ———: ———: **Validity of Appraisal.** If appraisers, appointed under a lease to appraise land for the purpose of fixing the rent, misconceive what questions they are to determine in fixing the value, or act with partiality, so that their valuation does not reflect their independent judgment, equity will set the appraisal aside.

8. ———: ———: ———: ———. Where a lease provided that the annual rent should be 6 per cent on the value of the ground only, without regard to improvements, and that there should be a revaluation every ten years, the appraisers could not consider, in making a revaluation, special assessments against the land for public improvements which the lessee would have to pay, since their duty was merely to fix the real value of the land.

9. ———: ———: ———: **Action to Set Aside Appraisal: Sufficiency of Evidence.** Evidence, in a suit to set aside an appraisement of land for the purpose of determining the rent pursuant to the lease, *held* to show that the amount fixed by the appraisers did not represent their judgment as to the actual value of the land.

10. ———: ———: ———: **Duty of Appraisers.** Inasmuch as the duties of an appraiser are *quasi* judicial, he may not act as the special representative of either party to the controversy, but it is his duty to sit in judgment upon the matter submitted to him and to impartially and fairly determine that matter, regardless of how the result may affect either of the interested parties.

11. ———: ———: ———: ———. The fact that an appraiser, appointed under a lease to appraise land for the purpose of fixing the rent, mistakenly thought that he represented

176 Mo. App. 23

the party to the lease at whose instance he was appointed, when it was his duty to act impartially, irrespective of the interest of any party, was ground for setting aside the appraisal.

12. ———: ———: ———: ———: Excessive or Inadequate Valuation. An appraisal of land, for the purpose of fixing the rent, may be so palpably excessive or inadequate as to show that it was not the honest judgment of the appraisers; and even though the excess or inadequacy is not so marked, it may be considered in connection with other circumstances showing ground to set aside the appraisal.

Appeal from St. Louis County Circuit Court.—*Hon. G. A. Wurdemann*, Judge.

REVERSED AND REMANDED (*with directions*).

*F. J. McMaster* for appellant.

(1) This was a common law arbitration and award, which is sought to be set aside by a court of equity. Railroad v. Elliott, 56 Fed. 772; Ins. Co. v. Galine, 114 Ala. 366; Oakes v. Moore, 24 Me. 214; Van Courtland v. Underhill, 17 Johns. (N. Y.) 405. (a) The test is this: Was there a difference or controversy between the parties? If so, it was an arbitration and not an appraisement. Russell on Arb. (3 Ed.), p. 43; Norton v. Gale, 95 Ill. 533; Stose v. Heissler, 120 Ill. 433. (2) Being a common law arbitration, appellant was entitled to notice of the time and place of meeting of the arbitrators and especially so when requested by her. None was given and the award was void. Tiffany v. Coffee, 142 Mo. App. 210; 3 Cyc. 640, and cases cited. (3) The award should be set aside because of mistake and misconduct of the arbitrators, as shown by (a) misconception of facts; (b) partiality; (c) failure to give notice; (d) inadequacy of the award. Dickinson v. Railroad, 7 W. Va. 390; Valle v. Railroad, 37 Mo. 445; Hyeronimus v. Allison, 52 Mo. 102; Bank v. Ins. Co., 85 Me. 58; Rand v. Redington, 13 N. H. 72, 38 Am. Dec. 475; Smith v. Coaley,

5 Daly (N. Y.), 401; Newland v. Douglas, 2 Johns, 62, 2 Story Eq., sec. 1452.

*Rassieur, Kammerer & Rassieur* for respondent.

(1) The valuation or appraisement under the terms of the lease was not a common law arbitration and award, and was not subject to the rules governing arbitrations. Holmes v. Shepard, 49 Mo. 600; Pearson v. Sanderson, 128 Ill. 88; Norton v. Gale, 95 Ill. 533; Stose v. Heisler, 120 Ill. 433. (2) (a) Where an appraisement is made by appraisers appointed as provided in the lease, and there is no violation of such provisions and no fraud or mistake, other than a mere error of judgment, the appraisement is conclusive on the parties. Pearson v. Sanderson, 128 Ill. 88; Norton v. Gale, 95 Ill. 533; Goddard v. King, 40 Minn. 164; Tiffany, Landlord & Tenant, sec. 173-d, p. 1050. (b) And such is the law, even though the appraisers adopted an erroneous theory in arriving at their conclusion. Goddard v. King, 40 Minn. 164; Allen v. Hickam, 156 Mo. 49, 58; Reily v. Russell, 34 Mo. 524. (3) The parties were not entitled to notice of the meeting of the appraisers, and were not entitled to appear before them to be heard or to offer evidence. Holmes v. Shepard, 49 Mo. 600; Pearson v. Sanderson, 128 Ill. 88; Norton v. Gale, 95 Ill. 533. (4) The mere fact that the valuation of the appraisers was low, in other words, that the appraisers merely erred in judgment, does not furnish ground for relief in equity. Board of Education v. Frank, 64 Ill. App. 367; Allen v. Hickam, 156 Mo. 49, 58; Reily v. Russell, 34 Mo. 524, 527.

ALLEN, J.—This is a suit in equity instituted in the circuit court of St. Louis county for the purpose of setting aside a valuation or appraisement of certain real estate situated in the town of Webster Groves, in said county, made by two appraisers as of date Jan-

uary 1, 1910, and to secure another appraisement thereof pursuant to the terms of a certain lease wherein appellant is lessor and respondent lessee. The court below found the issues in favor of the defendant, dismissing plaintiff's bill, and the plaintiff has duly prosecuted her appeal to this court.

The lease in question was executed January 1, 1860, by one Thomas J. Payne, as lessor, and one Frank E. Robinson, as lessee, whereby the premises therein described were leased for a term of one hundred years, commencing January 1, 1860; the plaintiff having become the owner in fee of the property in question, and entitled to all the rights of the original lessor in the lease, and the defendant, respondent here, having by mesne conveyances and assignments acquired all of the rights of the original lessee therein.

The provisions of the lease here pertinent are as follows:

"And it is further agreed that after the 1st day of January, 1880, the annual rent of the ground hereby leased, shall be at the rate of six per cent per annum on the value of said ground only, without regard to the improvements thereon; and there shall be a valuation anew of said ground every ten years; the first of said valuations shall be made on the first day of January, 1880, or within ten days thereafter, and the other and following valuations shall be at the end of each term of the succeeding ten years, and on the first day of January or within ten days thereafter. If the parties hereto cannot agree upon the value of said land at the respective periods for making said valuations they shall each choose a person to make said valuations and if they (the persons chosen) cannot agree, they shall choose a third person, who shall be a landholder and a decision of two of the three shall be binding. If the said lessee, or his legal representatives or assigns shall fail to choose a person to value the said ground at any of the several valuations herein

specified, this lease on such refusal shall be void and the estate hereby created shall cease and determine.

"And if the lessor, his legal representatives or assigns, shall fail to choose a person to value said ground at any one of the said several valuations herein specified, the said lessee, or his legal representatives or assigns, shall request the acting sheriff of the county of St. Louis to designate such person, who shall be a landholder, and the acts of the person so chosen shall be binding.

"In making said several valuations of the ground herein specified and stipulated to be made, the improvements on said ground shall not be taken into consideration."

The petition sets up plaintiff's ownership of the property, the existence and terms of the lease, and the relation of lessor and lessee between plaintiff and defendant.

It then alleges that on the first day of January, 1910, or within ten days thereafter, was one of the times or periods for fixing the valuation of the ground for the purpose of ascertaining the amount of rental to be paid annually therefor for the ten years next ensuing; that on or about January 5, 1910, plaintiff notified the defendant to negotiate with one Charles A. Baker, plaintiff's representative, for the purpose of agreeing on the value of said land, and that whatever agreement defendant and said Baker might reach would be satisfactory to plaintiff; but that respondent refused to negotiate with said Baker, and on or about January 5, 1910, notified the plaintiff that the latter and defendant could not agree upon the valuation of said ground, and that defendant thereupon had appointed one Edward Clayton, a landowner, of St. Louis county, as her appraiser to determine said value, and requested plaintiff to appoint some one to act for her; and that on January 13, 1910, the sheriff of St. Louis county appointed one John Connor as the appraiser of

said ground, and notified the plaintiff that he did so under said lease and by reason of the fact that plaintiff had failed to choose a person to appraise the ground.

The petition further avers that thereafter plaintiff notified said Clayton, prior to the time that he and said Connon acted, that she desired to be heard at such time and place as the appraisers might meet to make the valuation of the ground, for the purpose of laying before them evidence of its true value, and asked that she be notified of the time and place of such meeting; but that Clayton and Connon, for the purpose of preventing her from having this opportunity, failed, refused and neglected to notify plaintiff of the time and place of such meeting.

The petition then avers that the day following that upon which Connon was appointed, he and Clayton met and pretended to fix the value of said land, without regard to the improvements, at the amount of $2000; that the value placed by them thereupon was so much less than the true and correct value as to amount to misconduct and partiality on their part, to the great injury to plaintiff; that, in fixing such value, said appraisers did not consider the true and correct value of the ground, without regard to the improvements, but undertook to fix the value of what they termed the "franchise," or what they in their judgment thought was a proper rental value of the premises, irrespective of the true value of the ground as required by the lease; that the true and correct value of the property, without regard to the improvements, was $10,000; that said appraisers were biased and guilty of misconduct and partiality in fixing the value thereof; and that plaintiff on February 4, 1910, notified the defendant in writing that she would not accept or abide by the said valuation.

The prayer of the petition is for an order and decree setting aside and vacating the appraisal of said

ground fixed by said appraisers, and directing the parties to proceed in accordance with the terms of the lease to ascertain the value of the ground as of January 1, 1910, and report to the court.

The answer admitted plaintiff's ownership of the ground, the existence and terms of the lease and the relation of lessor and lessee between plaintiff and defendant; that January 1, 1910, or within ten days thereafter, was a time or period for fixing a new valuation upon the ground for the purpose of ascertaining the rental, and the appointment of the appraisers as alleged in the petition.

After denying the other allegations of the petition, the answer sets up that plaintiff and defendant had an interview on January 5, 1910, for the purpose of fixing the value of the ground under the terms of the lease, and that they could not agree; that by reason of such disagreement defendant appointed said Clayton as her representative to make the valuation and notified plaintiff and requested her to choose some one to represent her for such purpose; that the plaintiff failed to thus appoint an appraiser, and that thereupon said John Connon was appointed by the sheriff, at defendant's request.

The answer then avers that said appraisers, Clayton and Connon, were impartial and unbiased, and that two thousand dollars represented the true value of the property, exclusive of improvements.

The reply was a general denial of the new matter in the answer.

Plaintiff, in her own behalf, testified that prior to January 5, 1910, she had not seen defendant for some months; that on the last mentioned date defendant called at her house to see her in regard to placing a valuation upon the ground; that she informed defendant that she had left the transaction of all of her business to her brother, Charles A. Baker, who was her agent, and requested defendant to see him in regard

to the matter; that this was in substance all of the conversation had between them at the time; and that thereupon defendant handed plaintiff a paper, which was offered in evidence in the cause and which is as follows:

"St. Louis, Mo., January 5, 1910.
"Mrs. Mary B. Sholz:

"Since you cannot agree with me upon the valuation of that part of lot 2 of T. J. Payne's subdivision of the Sarpy tract which I hold under lease of Mr. S. J. Payne to Fred E. Robinson, that is 465 feet front on the north side of Lockwood avenue, by a depth northwardly of 267 feet, more or less, for rental determination, I desire to inform you that I will appoint Mr. Edward Clayton, a landholder of St. Louis Co., as my appraiser, and request you to appoint another to act for you to determine such valuation.

"Yours respectfully,

"SARAH M. MILLS."

Plaintiff further testified that on or about the 13th or 14th day of January, 1910, the defendant again came to her house and left with her the following paper, which was admitted in evidence, viz.:

"January 13, 1910.
"Mrs. Mary B. Sholz and Miss Sarah M. Mills.

"Ladies: Please take notice that, under indenture of lease dated January 1, 1860, made by Thomas J. Payne of St. Louis county, Mo., to Frederick E. Robinson of said county, I have appointed John Connon, a landholder of said county, as a valuer or appraiser of the premises in said indenture described and still remaining subject to the terms of such indenture, by reason of the fact that the representative of the lessor has failed to choose a person to value said ground.

"Yours respectfully,

"JOHN GRUENINGER, JR.,
"Sheriff of St. Louis Co., Mo."

On behalf of plaintiff, her brother, Charles A. Baker, a real estate agent residing in the town of Webster Groves, testified that, prior to January 1, 1910, and for some time thereafter, he was plaintiff's agent in respect to all matters pertaining to her real estate; that, on the evening of January 6, 1910, when he returned home, he found the instrument of January 5, 1910, above set out, which had been left at his house for him; that, upon receiving the same, he attempted to reach the defendant, having obtained her address from a directory, but could not find her; that he then made several efforts to see her attorney, but was unable to reach him until on or about the 13th day of January, when the latter said that he thought the sheriff had already appointed an appraiser for plaintiff; that, on the last mentioned day, he received the paper of that date above quoted, and that, immediately upon receipt of the same, he attempted to get into communication with Mr. Connon, the appraiser named therein; that he was unsuccessful in this, but reached Mr. Clayton, the other appraiser, by telephone, and later in the day met him on a train, and informed him that he (the witness) desired to be present when the appraisers met, in order that he might make a statement in behalf of the owner of the property; that he made various efforts to reach Connon, finally doing so on the morning of the 15th of January, when he learned that the meeting had been held and the appraisement made, the value of the property being fixed at $2000.

This witness testified that thereafter he had a further conversation with Connon in the presence of Walter Sholz, a son of plaintiff, in which he asked Connon how such a low valuation happened to be placed upon the property, and that the latter stated that $2000 did not represent the value of the property, that it was more valuable than that, and that he thought that the value at which it was appraised represented simply the amount agreed upon as the basis of the rental, and

not the value of the ground. The witness further tes-
tified that Connon stated that he had not read the lease
and did not know that the latter called for the valua-
tion of the ground, and that he had not been so in-
structed; that when the witness asked who instructed
him, he said that defendant's counsel had done so; that
Connon stated that he did not consider that he repre-
sented the plaintiff, and she had failed to name a rep-
resentative and he had received his appointment from
the sheriff.

The witness further testified that, subsequent to
January 14, 1910, he had a conversation with Clayton,
the other appraiser, in relation to the appraisement,
and that the latter opened the conversation by saying,
"Perhaps you may not be pleased with the award that
was made, but if you are not you must see the other
man who represented you;" that Clayton said that he
knew that $2000 did not represent the value of the
ground, but was only an amount that had been agreed
upon as a basis of rental for the next ten years; that
it was the amount that had been agreed upon in the
previous decade, and that if it was right at that time,
it was right at the time of this appraisement; that Clay-
ton said that he represented the other party.

On behalf of plaintiff, Mr. Walter V. Sholz, plain-
tiff's son, testified that he was present at the conver-
sation between Connon and Baker, concerning which
the latter testified, and that during this conversation
Connon stated that he did not know that he was acting
as appraiser for plaintiff; that he had been appointed
by the sheriff, and that he was not familiar with the
terms of the lease and had not seen it; that he under-
stood that the appraisers were to appraise the value
of the "franchise," saying that he knew that the ground
was actually worth four or five times as much as the
amount of the appraisement.

This witness also testified that he had a conversa-
tion with Clayton, the other appraiser, in which the

latter said that he knew that the market value of the
ground was somewhere from twenty to thirty dollars
per front (the frontage being 465 feet), and said that
he had suggested that the lease be made on a valua-
tion of $3000, but that inasmuch as he represented
Mrs. Mills, he did not think it was his place to insist
on a higher valuation than the other appraiser.

John M. Connon, the appraiser who was appointed
by the sheriff, called as a witness for plaintiff, testi-
fied as to the meeting between himself and the other
appraiser to appraise the property; that he had seen
the defendant when she brought him the paper signed
by the sheriff appointing him as an appraiser, but that
she said nothing to him in regard to the meeting of the
appraisers or the value of the property; that no notice
was given to plaintiff or her agent that the meeting
was to be held; that he had read the lease in question
and that the appraisers had the lease when they met
to appraise the property, and that he looked at the
property before appraising it.

In respect to his conversation with Baker, concern-
ing which the latter testified, this witness on cross-ex-
amination stated that he had such conversation but
could not recall just what was said. When asked if
he had on that occasion stated that $2000 did not rep-
resent the value of the property the witness said: "I
might have said something to that effect in this way,
that in view of the fact that all these extra assessments
were on, I thought that that was about the right price
in my mind that would be the price to assess the value
at." The witness said that he did not recall saying
that he had not read the lease, and that Baker was mis-
taken in saying that defendant's counsel had instructed
him what to do, as he had not met defendant's coun-
sel.

On redirect examination, this witness testified con-
cerning the improvements, such as the construction of
sewers, sidewalks, and streets, that were being made

about this property, which created a heavier tax upon the property, and which the lessee would have to pay. When asked if he fixed the value of the ground lower because of this, he said: "I fixed it I suppose, I knew that the lease reads she has to pay all general and special taxes, of course she has to pay all these and I took that into consideration in my judgment." He was then asked: "Q. Then for the reason that she had all these improvements to pay for, you concluded that $2000 was all that ought to be fixed as the value for rental purposes? A. In my judgment, that was what I decided upon. Q. Then what you arrived at in your judgment would be a proper rental of that property under this lease, concerning all the improvements that were going on around her that she would have to pay for; is that correct? A. Certainly."

Edward W. Clayton, the other appraiser, who was appointed by defendant, testified that he had a conversation with defendant prior to his appointment by her as an appraiser, in which he told her that he did not know whether she wanted him, as his ideas might not agree with hers as to the value of the property, and asked that she get some one else; that the defendant told him that she did not want to do this; that nothing was said between them as to the value to be placed upon the property; that defendant was at his office once, at which time they had a conversation, but that he could not state what was said by either of them; that on the afternoon of January 14, 1910, prior to the meeting to fix the value of the property, he met defendant on the train and she gave him a paper which had been prepared, ready to be filled out, to be used by the appraisers to certify to their appraisement, asking if the appraisers would not meet as soon as possible, and the witness promised that this would be done; that that evening the witness telephoned the other appraiser, arranging to meet with him that night to make the appraisement. The witness testified that he had

a conversation with the defendant's counsel prior to the meeting, in which the valuation of the property was spoken of, and that he was told by defendant's counsel that he was at liberty to put the value of the property at whatever he thought was right; that the witness had lived on the property himself at one time; that he knew that the appraisement thereof for ten years and also twenty years prior to this time had been at a valuation of $2000; that he had noticed an increase in the value of real estate in Webster Groves in the last twenty·years.

On behalf of plaintiff, Sylvester C. Mercer testified that he was present and heard the conversation between Baker and Clayton concerning the value which the appraisers had placed upon the land in question; that Baker asked Clayton how the value was arrived at, and that the latter stated that the appraisement did not represent the selling value of the property, but represented the basis on which the rentals should be fixed; that Clayton also said something in regard to seeing Connon, as he (Clayton) represented the other side.

On behalf of plaintiff, four witnesses, all real estate agents and dealers in property in Webster Groves, testified as to the value of the ground, without the improvements, as of January 1, 1910. Charles A. Baker, plaintiff's brother, testified that the ground was worth $10,000; another of these witnesses, Al. T. Smith, testified that in his judgment the property was worth from twenty to twenty-five dollars per front foot for the 465 feet frontage, i. e., that the property was worth between $9300 and $11,500; Theo. R. Appel, testified that its value was $10,000; the testimony of another witness, Morgan Coggeshall, was to the effect that its value was $13,950.

Defendant in her own behalf testified to taking the instrument of January 5, 1910, quoted above, to plaintiff's house; that she asked plaintiff to agree with her

on the value of the property and that plaintiff said that she (plaintiff) knew nothing about business, and that her brother, Mr. Baker, was her agent and asked defendant to see him. That she did not see plaintiff again until January 14, 1910, at which time she delivered to plaintiff the instrument of that date by which the sheriff had appointed Connon as an appraiser; that Connon stopped at her house on his way to the meeting at which the appraisement was made, but that nothing was said to or by him concerning the value to be placed upon the property; that the witness had at no time made any attempt to see plaintiff's brother, Mr. Baker, after her first meeting with plaintiff, at which she was requested to see him and negotiate with him. She also testified concerning her conversation with Clayton on the train as to which the latter testified. Her recollection was that Clayton said that something like $3000 might be his appraisement, to which she made no answer.

Defendant's counsel, Judge Leo Rassieur, testified to preparing the papers for appointing the appraisers; that as to the appointment of an appraiser by the sheriff, he asked defendant to suggest some one of good standing with whom she had no business or social connection and who could be relied upon to make a fair appraisement, and that defendant suggested Connon, whose father had been an appraiser of the property ten or twenty years before. The witness also testified that he had an indistinct recollection of seeing Clayton prior to the appraisement, and of the latter's asking how he should be guided in making the appraisement, and that the witness told him to read the lease and follow it.

On behalf of defendant, three witnesses testified with respect to the value of the property as of January 1, 1910. One of these, Judge E. W. Mills, a nephew of defendant, testified to the effect that the property was worth nearly $6000. Another of these

witnesses, W. F. Kemper, who had been a real estate agent for two or two and one-half years, testified on direct examination that the property was worth about $3500. On cross-examination, estimating it per front foot, he stated that its value was about $3700. Another witness, Marion Simmons, a real estate dealer, placed a value upon the property of ten dollars per front foot, of 465 feet, or $4650 for the whole; stating that he did not know much about the property, and could not say that he had ever taken any particular notice of it, but passed it almost daily.

I. The position taken by learned counsel for appellant is that this was a common law arbitration and award, and that therefore appellant was entitled to notice of the time and place of the meeting of the arbitrators, and especially so when she had made request therefor. Respondent denies that it was a common law arbitration and award, and hence not governed by the rules applicable to an arbitration.

The authorities in general hold that whether or not a proceeding such as this is an arbitration, depends upon whether there can be said to be a controversy or dispute between the parties, which is thus referred for settlement. If there has been a difference or controversy between the parties prior to their submitting the matter, then it is regarded as an arbitration. If, however, the parties have entered into a contract, leaving the price of certain property merely undetermined, and agreeing that the value thereof shall be fixed by some third person or persons to be selected therefor, and that the parties will be bound by such valuation, the essential elements of an arbitration are said to be lacking, for in such an instance there is no controversy or dispute. Under such circumstances, the persons so chosen to fix such valuation are generally regarded as mere appraisers or valuers, and the proceeding is not governed by the rules applicable to an

arbitration and award. "The valuer is not an arbitrator, in the proper sense, unless there have been differences between the parties previous to their submitting it to his decision. A decision which precludes differences from arising, instead of settling them after they have arisen, is for many purposes not an award." [See M. K. & T. R. Co. v. Elliott, 56 Fed. Rep. 772; Russell on Arb. (7 Ed.), p. 42; Norton v. Gale, 95 Ill. 533; Curry v. Lackey, 35 Mo. 389; Morse on Arb., p. 36.]

The question is very fully and ably discussed by PHILLIPS, J., in M. K. & T. Ry. Co. v. Elliott, supra, in which it is pointed out that the courts and text-writers are practically of one accord, holding that a proceeding, whether it be an appraisement or otherwise, is regarded as an arbitration whenever there is an antecedent controversy, dispute or disagreement between two or more parties which they submit to a third person, or third persons, for decision.

This precise question was touched upon in Holmes v. Shepard, 49 Mo. 600, referred to in M. K. & T. R. Co. v. Elliott, supra. The action was one in equity concerning the valuation of property by appraisers under the terms of a lease similar to that here involved. There, as here, the rent was to be fixed every ten years by a revaluation of the property by the parties, in case they should be able to agree on the same; but in the event they should fail to agree thereon, then an appraiser was to be appointed by each of them, and the two thus appointed to choose a third, in case they themselves should disagree. In that case, some of the parties interested in the leasehold were minors at the time for the revaluation in question, and the lessor undertook to proceed *ex parte* to appoint appraisers and have the property revalued. It was held that the valuation thus made was void and not binding on anyone; and that the rental would necessarily continue at the old rate until a proper valuation was made. The

court then, through ADAMS, J., proceeds to say: Nor
do we consider an appraisement or valuation made by
the appraisers, under a lease like this, an award or ar-
bitration within the technical meaning of those terms,
so as to subject it to the rules governing arbitration.
[See Garred v. Doniphan, 10 Mo. 161; Curry v. Lackey,
35 Mo. 389; Zallee v. Laclede Fire and Marine Ins.
Co., 44 Mo. 530.]''

In M. K. & T. R. R. Co. v. Elliott, supra, Judge
PHILLIPS remarks that in all of the cases cited by coun-
sel for respondent therein ''the contract provided in
the first instance for valuers of the property trans-
ferred, without any effort being first had between the
parties to come to an agreement, with the single ex-
ception of Holmes v. Shepard, supra, in which case it
is evident to my mind that Judge ADAMS' attention
was not directed to the distinction here sought to be
made, for the fact is the case was disposed by the court
on other grounds. This distinction is observed by text-
writers and courts, and must be because of the inherent
principle involved.''

If such a distinction is to be made as that to which
we have referred to above, then it would seem, in the
case before us, that if appraisers are to be called in
at all, then the proceeding must in its nature be an
arbitration. This follows from the fact that the lease
distinctly provides that such appraisers or valuers are
to be appointed and are to act only if the parties ''can-
not agree upon the value of said land at the respective
periods for making said valuations.'' The disagree-
ment of the parties in this respect is a condition prece-
dent to the right to appoint appraisers and submit
this question to them. If there be no disagreement or
controversy, then of course there is no occasion to sub-
mit the question to others; and if there be such disa-
greement or controversy, then it would seem that the

176 Mo. App. 24

proceeding takes on the form of an arbitration, and should be governed by the rules applicable thereto.

Be this as it may, and although what was said in Holmes v. Shepard, supra, to the effect that a proceeding such as this is not an arbitration, was obiter, nevertheless it is an expression of our Supreme Court on this question which it is doubtless our duty to follow; thus compelling us to hold that an appraisement under the terms of this lease is technically not an arbitration, and that, not being governed by the rules applicable to arbitrations, the plaintiff could not require notice of the meeting of the appraisers in order that she might be represented, for it is said that where an appraiser is a mere valuer and not an arbitrator, he is expected to act upon his own knowledge and judgment, and that evidence of witnesses, statements of parties or counsel, etc., are not contemplated. [See Norton v. Gale, supra.]

II. To hold, however, that such an appraisement is not a common law arbitration is by no means determinative of this case. Here it merely means that if the appointment of the appraisers was warranted and valid, and if they otherwise acted properly, then the appraisement is not to be held void for failure to give appellant notice of the time and place of the meeting at which the property was appraised. The record, in fact, abounds with evidence calling for the exercise of the equity power of the court to set aside the appraisement, as prayed for by plaintiff, aside from the failure of the appraisers to proceed according to the rules governing arbitrations. One very cogent reason why the appraisement, as made, cannot stand, is that there could be no valid appointment of appraisers under the terms of this lease, unless and until there was an actual disagreement between the parties respecting the value of the land. The case of Holmes v. Shepard, supra, is here directly in point. There the court said:

"The terms of this lease required that there should be an agreement or a disagreement between the parties as to the valuation before either could resort to appraisers to fix the value." So it is in this case. In the lease before us, the appointment of appraisers is authorized only in the event that the parties thereto "*cannot agree upon the value of said land* at the respective periods for making said valuation." Was there a disagreement of the parties? We think not. On the contrary it appears that no real attempt was made to reach an agreement prior to the appointment of Mr. Clayton by the respondent.

According to the testimony of both of the parties to the record, the respondent called at appellant's house on January 5, 1910, armed with a signed notice of the appointment of Mr. Clayton as her appraiser; that respondent spoke to appellant in regard to the valuation to be made of the property, and the latter referred her to appellant's brother and agent requesting that the matter be taken up with him. No attempt was made to agree upon any value, and no figure was suggested by either party. Neither did appellant thereafter make any effort to reach an agreement with plaintiff's agent. Nothing whatsoever was done, except that the matter was broached to appellant by respondent, and upon appellant's requesting that it be taken up with her agent, respondent at once served notice of the appointment of her appraiser. From this it cannot be said that the parties were unable to agree upon the valuation of the land, for indeed some effort in that direction must be made before it can be said that the parties "cannot agree."

Respondent's counsel urge upon us that it behooved respondent to act promptly, otherwise she would have forfeited her rights under the lease; and so the trial court remarks in a memorandum filed by the court in disposing of the case. This must be conceded, but it does not mean that the respondent was

at liberty to proceed to have appraisers appointed in disregard of the terms and conditions of the lease. In this connection, it should be noted that, though it behooved respondent to be vigilant and to act with promptness, nevertheless she appears to have made no effort whatsoever to come to an agreement with appellant respecting a valuation, prior to January 5, 1910. She not only did not communicate with appellant prior to January 1, 1910, but suffered one-half of the ten-day period in question to elapse before seeing her; then, without any effort to agree upon a valuation, she merely serves notice of the appointment of an appraiser, and later follows this up by having the sheriff appoint another. That she had only five days, after her visit to appellant, in which to act, was the result of her own delay in the premises, and avails her nothing in the face of the terms of the lease which must be followed in order that there may be any valid appointment of appraisers. It is quite clear that the contingency named in the lease which authorized the appointment of appraisers had not arisen, and that their appointment under the circumstances was wholly unwarranted, and their acts utterly void.

III.   But there are other compelling reasons why a court of equity cannot permit the appraisement to stand, even had the contingency arisen which would justify the appointment of appraisers; for, regardless of whether or not it is technically an arbitration, if the appraisers have proceeded under a mistake with respect to that which they were to determine or a misconception of their duty in the premises, or acted with undue partiality, and the valuation placed upon the property does not reflect their real and independent judgment, the case is one which invites equitable interposition.

Certain it is that an appraisement such as this rises at most to no higher dignity than an arbitration

and award, so far as relates to the right and duty of a court of equity to interfere upon the grounds above mentioned; and such matters furnish equitable grounds for impeaching an award. [See 3 Cyc. 738, 739, 743, 747, 753; Valle v. Railroad, 37 Mo. 445; Hyeronimus v. Allison, 52 Mo. 102; Coffin v. Insurance Co., 142 Mo. App. 295, 126 S. W. 253; Rand v. Reddington, 13 N. H. 72, 38 Am. Dec. 475; 2 Story Eq. (15 Ed.), sec. 1452.]

Here the appraisers were men of high standing and excellent reputation in the community, and the record before us negatives any idea of actual fraud or corruption on their part. Nevertheless the record abounds with evidence that they proceeded under a mistaken notion of that which they were to determine and under an entire misconception of their position and the duties devolving upon them, and that the appraisement certified to by them does not reflect their real judgment upon the question which was sought to be submitted to them for their decision.

One of the appraisers, Mr. Connon, testified that, in appraising the property, he took into consideration special assessments against it for improvements, such as sewers, sidewalks, streets, etc., in arriving at what he thought would be a proper rental for the property, for the reason that the lessee would have such special taxes to pay. This of course was erroneous, for the function of the appraisers was *to value the land* (without improvements), and not to determine what in their opinion would be a fair rental therefor, considering the taxes which the lessee would have to bear. Furthermore, two witnesses testified that Mr. Connon, in conversation with them, subsequent to making the appraisement, stated that he understood that the appraisers were to appraise the value of the ''franchise,'' saying that he knew the ground was actually worth four or five times the amount of the appraisement; and Mr. Connon gave no testimony on the witness stand denying such statement on his part.

In like manner two witnesses testified to a conversation with Mr. Clayton in which the latter is said to have remarked that he knew that $2000 did not represent the value of the ground, but was only an amount that had been agreed upon as a basis of rental for the next ten years. Mr. Clayton was not questioned as to this while on the witness stand, and the testimony of these witnesses stands uncontradicted in the record.

These facts indicate such mistake and misconception on the part of the appraisers as to make it clear that their appraisement did not and could not, under the circumstances, represent their judgment as to what was the actual value of the ground, and to vitiate their finding altogether; for indeed it is clear that they did not determine the question which was intended to be submitted to them, but another and different question altogether. And, however pure their motives may have been, the result is nevertheless such that a court of equity would be bound to say that no appraisement was had as contemplated by the lease. [See Coffin v. Ins. Co., supra.]

And in addition to the above, the record discloses a further mistake or misconception on the part of the appraisers, of such a nature as to make it appear that they did not exercise their own judgment and discretion upon the matter in hand, owing to a misconception of the duties enjoined upon them. That is to say, there is again the testimony of two witnesses, which was in no manner contradicted, that in a conversation with Mr. Clayton, the latter speaking to appellant's brother said: "Perhaps you may not be pleased with the award that was made, but if you are not you must see the other man who represented you;" and again that Mr. Clayton said that he represented "the other party." In like manner there is the uncontradicted testimony of two witnesses that the other appraiser, Mr. Connon, stated, in effect, that he did not consider that he represented appellant as she had failed to

name a representative and he had received his appointment from the sheriff. One witness testified that, in the course of a conversation with Mr. Clayton, the latter stated that he had suggested that the lease be made on a valuation of three thousand dollars, but that since he represented Mrs. Mills, he did not think it was his place to insist upon a higher valuation than the other appraiser; and this testimony stands uncontradicted.

It was the duty of each to act, not as the special representative of either party to the controversy, but to sit in judgment upon the matter submitted to them and impartially and fairly determine that question, regardless of how the result thereof might affect either party interested. Their duties were *quasi* judicial. And it scarcely need be stated that one may not act in a judicial or *quasi* judicial capacity, and at the same time represent the special interests of one party to the controversy. One who is possessed with the idea that he is the special representative of one of the parties in interest, and that it is his duty to look out for and protect the interests of such party, necessarily cannot, while laboring under such impression, occupy the position of arbitrator or judge with respect to such matter. ''For the purpose of illustrating the nature of the functions devolving upon arbitrators, they have been regarded *as the agents of both parties alike, so as to require equal justice between them, without favor to either.* But, however honest may be an arbitrator's intentions, it is highly improper that he should regard himself as the agent or partisan of the party appointing him; and because of the rule requiring impartiality of arbitrators, an award which appears to have been made as a result of partisanship should not, irrespective of the honesty of the arbitrator's motive, be allowed to stand.'' (Italics ours.) [3 Cyc., p. 625.] And the same rule here obtains whether this be technically an arbitration or otherwise.

It appears that, without any improper motives on

his part, Mr. Clayton considered that he represented the defendant, and that it was not his place or duty to insist upon a higher valuation than the other appraiser, although it seems that his judgment told him that the appraisement should be higher. The other appraiser appears to have considered that he was in no way concerned with the rights and interests of the appellant, since his appointment came through the sheriff at the defendant's instance. This misconception on the part of the appraisers alone affords sufficient grounds for the interference of a court of equity in setting aside the award.

Learned counsel for respondent urge that the mere fact that the valuation is lower than it appears from the evidence it should be, or that the appraisers merely erred in judgment, does not furnish ground for equitable relief. This may be conceded without in the least affecting plaintiff's right to have the appraisement set aside, though it is well recognized that an award (and likewise an appraisement) may be so palpably excessive or inadequate as alone to produce a conviction that it is not the result of the honest, independent judgment of the arbitrators. [See 3 Cyc., 749.] And where the award is not so excessive or inadequate as to produce such conviction, nevertheless the excessiveness or inadequacy thereof may be taken into consideration in connection with other circumstances showing the existence of grounds for setting aside the award.

The very cases most strongly relied upon by respondent to sustain the appraisement clearly recognize the principles here invoked. That the facts were not present in those cases, as here, justifying equitable relief, and that they proceed upon no different theory than that which we here follow, is quite apparent from the following excerpts:

Thus, in Board of Education v. Frank, 64 Ill. App. l. c. 372, 373 (cited also by the learned trial judge in

his memorandum filed in this cause), the court says:

"Where parties contract together as to methods of determining the value of property as a basis for fixing its rental, and such methods are pursued, neither side may obtain a standing in equity to be relieved from his bargain. . . . *If the appraisers were lawfully appointed, and made their valuation in accordance with the terms of the lease, the mere fact that their valuations were excessive, or, in other words, that they had merely erred in judgment,* would not furnish ground for relief in equity." (The italics are ours.)

And again in Allen v. Hickam, 156 Mo. l. c. 58, 56 S. W. 309, cited by respondent, the court quotes from Bridgman v. Bridgman, 23 Mo. 272, as follows:

"In a proceeding like the present, the question is not whether the arbitrators, who are the final judges both of the law and the fact, selected by the parties themselves, have erred in their judgment in respect to either, *but whether they have been guilty of partiality or corruption, or of any other misconduct prejudicial to the rights of the parties,* or have failed to make a final, mutual and definite award, or whether their award was procured by fraud or other undue means; *but the testimony here offered and rejected was to prove that the arbitrators had erred in judgment, and not to establish any legal grounds of relief to which we have referred,* and was therefore properly rejected." (Italics are ours.)

And in Goddard v. King, 40 Minn. 164, which respondent cites, the court says:

"The difference between the value as appraised by the referees, and as found by the court ($50,000 and $30,000), though great, is not of itself a reason for setting aside the award. The award is presumed, *unless fraud or mistake is shown,* to be the honest exercise of their judgment by the referees. . . . The parties bound themselves to abide by the judgment of

the referees, and the award upon such a reference cannot be avoided *on the ground merely that the decision of the referees is erroneous. On the facts found, the most that can be said against the award is that the referees erred in their opinion as to value.*" (Italics ours.)

In the case before us, it is not the mere inadequacy of the appraisement (although it is manifestly so low as to strongly appeal to the conscience of the court) nor a mere error of judgment on the part of the appraisers that furnishes the ground for setting aside the appraisement; but, aside from the fact that the appraisers were not lawfully appointed under the terms of this lease, it is their mistake of fact as to that which they were to determine and what they were to take into consideration, their misconception of the duties of their position whereby they (unintentionally and without improper motives we have no doubt) acted with partiality, so that the appraisement made did not in any proper sense reflect their real judgment and opinions touching the value of the property in question. That the result does not reflect their independent judgment as to such value abundantly appears from the evidence.

In view of the facts which obtrude themselves from this record demanding equitable interference and relief against the appraisement made in the manner and under the circumstances detailed above, it is altogether clear that the learned chancellor below erred in finding the issues in favor of the defendant and in dismissing plaintiff's bill. The judgment of the circuit court must therefore be reversed, and the cause remanded, with directions to enter a decree for the plaintiff in accordance with the prayer of her petition. It is so ordered. *Nortoni, J.,* concurs; *Reynolds, P. J.,* concurs—understanding that we hold that under the lease, the parties chosen or to be chosen, proceed as appraisers, not as arbitrators.