WILLIAM A. CURRY, Defendant in Error, *v.* ROBERT J. LACKEY, Plaintiff in Error.

| 35 | 389 |
| 98 | 234 |
| 35 | 389 |
| 113 | 453 |
| 35 | 389 |
| 98a | ²609 |

1. *Practice—Pleading—Demurrer.*—A demurrer admits the truth of the averments made, but denies the legal conclusion therefrom. The exhibits filed with a pleading cannot be made part thereof, nor be considered in deciding upon the sufficiency of the pleading.
2. *Arbitrations—Contract.*—An agreement between two parties to leave to a third person to determine the difference in value between two slaves exchanged, does not make such person an arbitrator, there being no matter in controversy between the parties.
3. *Evidence.*—The unsworn *ex parte* statement in writing made by one who is a competent witness, is not admissible in evidence.

*Error to Cole Circuit Court.*

The plaintiff asked the following instructions, to wit:

"If the jury believe from the evidence, that on or about the 14th day of September, 1858, plaintiff sold defendant a slave named Ned for $1,000, and that plaintiff and defendant there agreed that the defendant should discharge and pay same amount or part thereof by the sale and delivery to plaintiff of another slave named Aaron, *alias* Rock, and that the value of the last named slave was to be fixed by J. B. Gardenhire, and that the defendant promised and agreed to make up any difference that might be fixed between the value of said slaves by the said Gardenhire, and that said Gardenhire did fix the value of the slave Aaron, *alias* Rock, at $800, and did fix the difference in value between said slaves at $200, they will find for the plaintiff that amount, with six per cent. interest thereon from the 4th day of October, 1858, the time of fixing the difference of value between said slaves by the said Gardenhire."

The following instruction asked by the defendant was refused:

1. If the jury believe from the evidence, that the slave gotten by plaintiff was of as great or greater value than the one received by defendant, they will find for defendant.

The court gave for defendant the following instructions:

2. Before the jury can find for the plaintiff on the instrument or certificate given by Gardenhire, they must be satisfied that instrument was given by him in strict pursuance of the authority given or delegated to him in the instrument marked "A." and signed by defendant.

3. It devolves upon the plaintiff to prove that he did, at the time mentioned in the petition, sell to the defendant a slave for $1,000, and that said amount was agreed by the parties to be discharged by the sale and delivery of another slave named Rock, and that the value of the last named slave was to be determined by J. B. Gardenhire, and in the absence of such proof the jury will find for the defendant.

*King* and *White*, for plaintiff in error.

I. We insist that the court below erred first in overruling the demurrer, and afterwards permitting defendant in error to read in evidence the written statement of J. B. Gardenhire. It should have been struck out on the demurrer, or rather the demurrer should have been sustained, because, taking it in connection with the pleading, it was double. Because said written statement of Gardenhire purports to have been given in pursuance of the instrument executed by Lackey; and in this it is manifest, that no price had been fixed upon either slave; and yet, Gardenhire's statement says that the price of the slave received by plaintiff in error had been agreed upon. Because said written statement of Gardenhire, after first assuming that the price of one slave had been fixed, fixes the value of the other slave, and does not undertake. to fix the difference in value as the instrument signed by Lackey required him to do.

Whether, then, we regard the act of Gardenhire in the light of an agent for both parties, or as a referee or arbitrator, his authority is not well executed. If he did it as agent, he did not pursue the authority given him strictly, and his acts are consequently not binding, as it is a rule of law that an agent must follow strictly his authority. If he is regarded in the light of an arbitrator, then the statute requires that he

should have first been sworn, and a time and place set for the examination of the two slaves, when both parties would have had an opportunity of attending.

The demand must have been made and determined in pursuance of the agreement.   (Sto. Contr. § 987.)

For the same reasons the court below erred in permitting defendant in error to read Gardenhire's certificate.   And after the same was read, the plaintiff in error should have been permitted to read the explanatory statement of Gardenhire.   If the first statement was such us to enable it to be read, the second was certainly equally so.   All contemporaneous writings between the parties relating to the same subject matter are admissible.   (1 Greenl. Ev. § 283.)

*J. L. Smith,* for defendant in error.

I. The Circuit Court committed no error in refusing to sustain the defendant's demurrer to the plaintiff's petition.

II. The Circuit Court committed no error in refusing to sustain defendant's objection or demurrer to the reading to the jury of " Exhibit B."   This was no arbitration, and hence no statutory procedure.

An arbitration is where the parties injuring or injured submit all matters in dispute concerning personal chattels or personal wrong to the judgment of two or more arbitrators, &c.   ( 2 Black. Com. 16.)   The statute provides that all persons, naming certain exceptions, may submit to one or more arbitrators any controversy which may be existing between them, &c.   (R. C. 1855, p. 194, § 1; Garred v. Macey et al., 10 Mo. 164.)

III. It appears from the bill of exceptions, that defendant offered to read a statement of Gardenhire to the jury, which was objected to by the plaintiff, and the objection sustained by the court.   But the bill of exceptions does not show what the statement was, nor what the causes of objection thereto by the plaintiff were, and hence this court cannot review the matter.   (Fields v. Hunter, 8 Mo. 128; Martin v. Hogan, 8 Mo. 505.)

DRYDEN, Judge, delivered the opinion of the court.

A demurrer to a petition confesses the truth of all the allegations of the petition which are well pleaded, but denies the legal conclusion the plaintiff would deduce from them. In determining the sufficiency of the petition in such case, the averments contained in it can alone be considered. Nothing beyond can be looked to. This reference to the scope and operation of a demurrer, is induced by the course of argument pursued by the counsel in the case at bar.

It appears from the petition that there was a mutual sale or an exchange of slaves between the plaintiff and defendant, the value of the slave transferred by Lackey to Curry, by the terms of the agreement to be fixed by Gen. Gardenhire, and the difference in value, if any, to be paid by Lackey. The agreement to refer the question of value to the judgment of Gardenhire, was reduced to writing and signed by Lackey; and Gardenhire afterwards in a note addressed to the parties, signified his decision of the question, finding the difference to be $200.

These two documents were filed with the petition, and marked exhibits "A." and "B." "and prayed to be taken as part of the petition." The counsel for the plaintiff in error insisted in the argument, that the averments of these documents, made exhibits, did not sustain the averments of the petition, and that the petition was therefore bad and the demurrer ought to have been sustained. The prayer of the petition that the two documents might be taken as parts of it, did not make them so, and the court had no power to take them into consideration in determining the demurrer; but in its determination, was limited to a view of the allegations of the petition only.

Aside from the supposed incongruity between the exhibits and the allegations of the petition, no objection to the petition is suggested. The demurrer was properly overruled.

The answer of the defendant, after the denial of various allegations of the petition, proceeds as follows: "Defendant

avers, that as shown by exhibit marked 'A.' in plaintiff's petition, the defendant was to make up any difference in value that might be fixed by James B. Gardenhire, between negro boy Ned conveyed by plaintiff to defendant, and negro boy Aaron conveyed by defendant to plaintiff; but defendant avers that said Gardenhire did not value both of said slaves and fix the difference of value between them, as required to do by exhibit in plaintiff's petition marked 'A.'; but the said Gardenhire upon certain misrepresentations made by plaintiff in the absence of, and without the knowledge of the defendant, fixed a value upon one of said negroes only, to wit, the said Aaron, *alias* Rock, and by reason alone of the said misrepresentations of said plaintiff, assumed the value of Ned as aforesaid at a certain sum, which assumption was incorrect and not in accordance with the terms of said agreement of said plaintiff, as will more fully appear by exhibits herewith filed marked ' C.' and 'E.,' and asked to be made part of this answer."

The paper called exhibit "A." is in these words: " I promise to make up any difference in value that may be fixed by Gen. J. B. Gardenhire, between negro boy 'Ned' conveyed to me by Wm. A. Curry, and negro boy 'Aaron' conveyed by me to said Wm. A. Curry, as per two bills of sale bearing date the 14th September, 1858. R. J. Lackey."

Exhibit " B." is as follows:

" Jefferson City, Mo., October 4, 1858. Gentlemen: I have examined the negro boy Aaron, delivered to Dr. Curry by Mr. Lackey, and think he is worth eight hundred dollars. The value of Ned being fixed at one thousand dollars, the difference therefore in their values is two hundred dollars. Respectfully, Jas. B. Gardenhire. Messrs. Lackey and Curry."

On the trial of the case the respondent offered in evidence exhibit " B.," to the reading of which the defendant below objected, " because the same did not appear on its face to have been given by J. B. Gardenhire in pursuance of the authority executed by defendant marked "A." and did not

value each slave and fix the difference between the two slaves as Exhibit A. required; nor did it appear that said Gardenhire had ever been sworn as the statute concerning arbitrators requires; nor did it appear that he ever fixed a time for the valuation or making an estimate of the difference between the two slaves;" but his objection was overruled, and the paper was read; and this is assigned for error.

First, in regard to the objection that the paper did not pursue the authority conferred by Exhibit A. The position of the defendant taken in the answer, and maintained on the trial was, that it was the duty of Gardenhire under the authority by which he acted, to fix the value of both slaves, and ascertain the difference between two. Whereas he had, in point of fact, fixed the value only of the one transferred by Lackey to Curry, and had assumed the value of the other in disregard of his actual value. I do not see the force of the objection. It seems to me it would require a strained construction of the instrument, to hold that Gardenhire had not fixed the value of both slaves. As to his having fixed the value of Aaron, there is no dispute. As to Ned he says, " the value of 'Ned' being fixed at one thousand dollars," fixed by whom? It not being said by whom it was fixed, and it being, as held by the defendant himself, the duty of Gardenhire to fix it, a fair construction of his language would require us to hold, it was fixed by him.

But second, in regard to Gardenhire's not having been sworn as an arbitrator, before acting under his appointment. This objection, like the first, is not well taken. The reference of the question of value to Gardenhire, was not a submission to arbitration in the proper sense of that term. A reference to arbitration occurs only where there is a matter in controversy between two or more parties. In this case, there was no controversy between the parties, but they mutually sold the one to the other a slave, at a price to be fixed by the terms of their contract by another. (Garred v. Macey et al., 10 Mo. 161.)

In the progress of the trial the plaintiff in error offered in

evidence an unsworn, *ex parte* statement of Gen. Gardenhire made in May, 1861, since the institution of this suit, as to the influences which controlled him in arriving at the result named in Exhibit B. The statement was rejected, and the action of the court in this behalf is likewise assigned for error. Palpably the court could not have done otherwise than reject this paper without violating the most familiar rules governing the admission of testimony.

We see nothing in the giving or refusing of instructions to the jury that would justify us in disturbing the verdict. The instruction given at the instance of the respondent was, in our opinion, a fair exposition of the law as applicable to the case, and those given for the defendant presented the law of the case as strongly for him as he ought to ask.

We find no error in the record. Let the judgment be affirmed. The other judges concur.