MORGAN et al. v. MERCHANTS' CO-OPERATIVE FIRE INS. ASS'N OF CENTRAL NEW YORK.

(Supreme Court, Appellate Division, Fourth Department. May 22, 1900.)

FIRE INSURANCE—ESTIMATE OF LOSS—ARBITRATION—PROVISION IN POLICY—CONSTRUCTION—FINAL AWARD.

A policy issued by a mutual fire insurance company provided that on proof of loss a member of the company chosen by its president, a second chosen by the insured, and the manager of the company should determine the amount thereof, and should report their estimate to the company's executive committee, which should proceed to liquidate the same. Plaintiff's adjuster, chosen under this provision, refused to concur in the estimate of loss submitted to the committee by the other adjusters. Held that,

as the provision would be construed most strictly against the company, the insured was entitled to the concurrence of all three adjusters in the estimate, and to a judicial review of such estimate by the executive committee, and hence that, in the absence of these things, it was error to exclude the insured's evidence of his actual loss, on the theory. that a final award had been had.

Appeal from trial term, Oneida county.

Action on a policy by David H. Morgan and Charles R. Morgan against the Merchants' Co-operative Fire Insurance Association of Central New York. From a judgment in favor of plaintiffs for less than the amount sued for, and from an order denying their motion for a new trial, they appeal. Reversed.

The defendant is a co-operative fire insurance company, and on the 12th day of June, 1896, issued its policy to the plaintiffs, whereby it insured a stock of goods owned by them, in their store, at Saquoit, N. Y., against "loss or damage by fire," in a sum not exceeding $2,880, and also $120 .on store furniture and fixtures, for the term of one year, and for the initial premium of $37.50. The policy was kept in force by renewal, and during its life, and on the 8th day of August, 1897, said merchandise, furniture, and fixtures were wholly destroyed by fire. Section 17 of the defendant's by-laws, which are printed on the face of the policy, so far as it pertains to this case, reads as follows: "Any member suffering a loss for which this association is liable shall immediately notify the secretary in writing; and within ten days thereafter a member designated for that purpose by the president, and another member chosen by the party suffering such loss, together with the manager of this association, shall proceed to the place of the incurred loss, and determine the amount of the same. The three adjusters shall within five days thereafter report their estimate as to the amount of such loss, in writing, to the executive committee, who shall proceed to liquidate the same in accordance with the powers vested in them for that purpose." In pursuance of this provision the vice president of the company selected one member, the plaintiffs another, and these, with the manager, proceeded to the place of the fire, and took data for determining the amount of the loss. The man selected by the .vice president and the manager agreed upon their estimate, fixing the value of the destroyed property at the sum of $1,986.82, but the one chosen by the plaintiffs declined to join in this report. There was concurrent insurance upon the property. Consequently the defendant was obliged to pay only its proportion of the entire loss, and this reduced the sum for the company to pay, according to the estimate, to $1,312.03. The court directed a verdict for the plaintiffs, limiting the recovery to the amount of the award. Other facts appear in the opinion.

Argued before ADAMS, P. J., and McLENNAN, SPRING, and LAUGHLIN, JJ.

P. C. J. De Angelis, for appellants.
Thomas Jones, for respondent.

SPRING, J. The report made by the adjusters indicated that on March 1, 1894, the plaintiffs' inventory showed goods on hand of the value of $6,857.16. The plaintiffs attempted to show that at the time of the fire their merchandise was worth over $6,000, but the proof was excluded, and the trial court, in explicit terms, held that the determination of the two adjusters was conclusive, and the recovery was restricted to their adjustment. Section 17 of the by-laws, quoted above, is stringent in its provisions. The manager of the defendant, another one of its members, selected by the president, and still another member, selected by the assured, are to determine the loss. All three, therefore, must belong to the association, and two of them are sig-

nificantly within its dominion.   A one-sided stipulation of this kind will be construed most liberally in favor of the insured, and every ambiguity will be resolved in his aid.   Rickerson v. Insurance Co., 149 N. Y. 307–313, 43 N. E. 856;  Gillet v. Bank, 160 N. Y. 549–554 et seq., 55 N. E. 292;  Mead v. Insurance Co., 13 App. Div. 476, 43 N. Y. Supp. 334;  May, Ins. § 175;  Janneck v. Insurance Co., 162 N. Y. 574, 57 N. E. 182.   The three men selected are required to "proceed to the place of the incurred loss and determine the amount of the same." They are then, within five days, to "report their estimate as to the amount of such loss, in writing, to the executive committee, who shall proceed to liquidate the same in accordance with the powers vested in them for that purpose."   The full intendment of this language is that the persons chosen make a tentative report to the executive committee, and that body determines the sum to be paid;  that is, the absolute determination rests with the executive committee, and the report is for their enlightenment,—a detailed basis for their guidance. The three men selected must go to the place of the fire, and determine the amount of the loss, which must be founded upon facts and data acquired on the ground, and they have five days in which to formulate the figures and make their report.   The verbiage in defining the duties of the executive committee is peculiar.   After the estimate has been made, they are to "proceed to liquidate the same";  that is, they are to ascertain,—to pass upon the preliminary report.   Had the report of the men chosen been the final arbitrament, the executive committee or some administrative officer would have been charged with the payment of the sum awarded.   There is no intimation in this case that the executive committee took any action upon this report.   That body was charged with an affirmative duty.   The insured, under this drastic policy, was entitled to the consideration and to the judgment of the members of that committee.   They might disagree with a report which recognized an inventory of the plaintiffs' stock in 1894 at the sum of nearly $7,000, and then, by a computation based somewhat upon speculation, reduced it to below $2,000 in 1897.   If plaintiffs are to be within the control of the defendant, they can insist upon their pound of flesh, and have every step taken provided for by the policy by which their rights are to be determined.   But, beyond this, assuming that the report of the adjusters is final, it does not come within the pale of the language used.   Only two adjusters—those selected by the defendant—concurred in this report.   Apparently there was no formal meeting after they were at the place of the fire.   They talked over the amount of the loss on that day, and Hull, the adjuster chosen by the plaintiffs, did not agree with his associates.   A few days later Mr. Geer, the secretary and manager of the defendant, and ex officio one of its adjusters, prepared the report and presented it to Mr. Hull for his signature, but the latter declined to join in it.   Afterwards it was signed by Mr. Petrie, the man selected by the defendant. There was no meeting called to discuss the details of the report.   It was prepared in the defendant's office by its secretary and manager, and its deceptive profuseness of figures was never ventilated by any discussion by these adjusters.   The warrant of authority of these adjusters does not provide that a majority may make the adjustment.

It does explicitly require that the "three adjusters" shall make their report. This precludes a report by a less number. The basis of the intervention of the executive committee is the estimate of the three adjusters, not of a majority. Where an authority of this kind is intrusted to a definite number for a private purpose, all must unite in its execution, unless the agreement provides otherwise. Green v. Miller, 6 Johns. 39; Cope v. Gilbert, 4 Denio, 347; Weaver v. Powel, 148 Pa. St. 372, 23 Atl. 1070; Hubbard v. Manufacturing Co., 80 Me. 39–42, 12 Atl. 878. The principle is stated in Morse, Arb. p. 162, as follows:

"Unless the statute or the submission under which the arbitrators act and derive their authority provide to a contrary effect, or unless a contrary intention of the parties can be clearly and unmistakably gathered from the submission and attendant facts, the rule is general and imperative that all the arbitrators must unite in the award, in order to render it valid."

And in 2 Am. & Eng. Enc. Law (2d Ed.) p. 643, is the following:

"All must join in private matters, unless there is an express provision to the contrary in the statute or submission under which the arbitrators act, or unless it can be inferred from the submission itself and the surrounding circumstances that the parties intend the contrary. Arbitration being usually a private matter, all the arbitrators must join in the award, or it is invalid."

In Hubbard v. Manufacturing Co., 80 Me. 39, 12 Atl. 878, the doctrine is thus announced at page 42, 80 Me., and page 879, 12 Atl.:

"For it is a well-settled principle that where a submission is made by private parties to a given number of persons, without any express authority given or to be inferred from the manner or circumstances of the submission, that a smaller number may decide an award or decision will be void unless made by all, though a different rule prevails where authority is conferred to several persons in matters of public concern."

There is a clear distinction between an arbitration of private import and one of public concern. In the latter a majority of the arbitrators chosen may act, where all have met, but that rule does not obtain where the controversy is between individuals. People v. Nichols, 52 N. Y. 478–481. This was not technically an arbitration. It is an agreement to select adjusters. They became the agents of those appointing them, and the principals were entitled to the performance of the agency by each of the persons selected. Tallcot v. Arnold, 61 N. Y. 616. It was not an arbitration pursuant to the Code of Civil Procedure, and the provision that an award by a majority is valid (section 2371) has no application. The rights of the parties in this case are fixed by their contract, and the powers of the adjusters are derivable solely from that instrument.

It has been urged that this construction vests the authority in the man chosen by the plaintiff, and his refusal to concur with his co-adjusters prevents a determination. By the very force of the provision the power is committed to three interested persons, two of whom are apt to be peculiarly favorable to the defendant, and the courts cannot be expected to strain to vindicate the position of the defendant. Unless the plaintiffs have the benefit of the concurrence of their representative, they are at the mercy of those interested in a low adjustment. The blocking of this scheme to determine the amount of the loss does not deprive the association of its rights. It can still interpose any

defense available to it, and it has the benefit of the investigation and estimate of two men favorable to its contention.

We think the determination of the two adjusters was not of conclusive force, and that plaintiffs should have been permitted to give evidence of the value of the property burned.

The judgment and order are reversed, and a new trial granted, with costs to the appellants to abide the event. All concur.