## HARRY DWORKIN and S. GRENT v. CALEDONIAN INSURANCE COMPANY, Appellant.

In Banc, December 13, 1920.

1. **FIRE INSURANCE:** Appraisement Clause: Annullment by Statute. The statute (Sec. 868, R. S. 1909) declaring that a clause in a contract "providing for adjustment by arbitration" shall not preclude either party from instituting suit on such contract, does not annul a clause in a subsequent insurance policy for the ascertainment by appraisement of the amount of damage done by fire to the insured property if the parties cannot agree as to the amount of the loss. [GRAVES and WOODSON, JJ., dissenting.]

2. ————: ————: ————: Appraisement and Arbitration. The statute provides for the adjustment of controversies "by arbitration,"

Dworkin v. Caledonian Ins. Co.

which means more than a mere appraisement. The fundamental difference between arbitration and appraisement lies in the procedure to be followed and the effect of the findings. An agreement to arbitrate is an agreement between parties who are in a controversy, or look forward to the possibility of being in one, to substitute a tribunal other than the courts to determine their rights; and arbitrators, like a judicial tribunal, must give notice to the parties of the time and place of hearing, and listen to and decide upon the evidence offered, and the original cause of action becomes merged into their award, which may be declared upon at common law as a new demand, or, under our statute, judgment may be entered upon it by the court designated. In simple appraisal of' values, the appraisers, if they wish, may hear what others have to say on the questions they are to determine, but unless the agreement so provides they are not bound to take testimony and may decide from their own knowledge or opinion, nor does their award create a new cause of action, but the liability of one party to the other is still upon the contract. An agreement to submit to appraisers the amount of the loss or value of property, even if the parties have disagreed about the matter, is not an agreement for arbitration.

3. ——: ——: ——: **Intention of Parties.** An agreement in an insurance policy that the estimate of the damage or loss caused by fire should be made by two appraisers, and, if they could not agree, by them and an umpire, containing none of the details of procedure required by the statute in an agreement for arbitration, such as a stipulation for the submission of the controversy in writing, or that some court might enter a judgment upon the award, or that the arbitrators should be sworn, and no stipulation for a hearing or for the taking of testimony or that the award should extinguish liability, was not, in the intention of the parties, an agreement for either a statutory or common-law arbitration; and as the statute precludes a suit on the contract only when it contains a clause "providing for adjustment by arbitration," such an agreement to submit the amount of the loss or damage to appraisers was binding. [GRAVES and WOODSON, JJ., dissenting.]

4. **ARBITRATION: Applies to All Contracts.** Section 868, Revised Statutes 1909, declaring that a clause in a contract "providing for adjustment by arbitration" shall not preclude an action on the contract, applies to all contracts, and cannot be restricted to fire insurance policies.

5. ——: **Use in Technical Sense: Adjustment.** The difference between an agreement for an arbitration and an agreement for an appraisement had been recognized by the courts of this State for many years prior to the enactment in 1909 of Section 868, Revised Statutes 1909, which provided that a clause in a contract "pro-

viding for adjustment by arbitration" should not preclude an action on the contract, and therefore the word "arbitration" must be understood as having been used in its technical sense; and another statute (Sec. 8057, R. S. 1909) provides that "technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import" and precludes a rendering of the word "arbitration" to mean "appraisement." The word "adjustment" is not a technical word, but means to fit, arrange, settle, equalize; and if the Legislature had meant by that word to include the word "appraisement" it would have been easy to make the phrase in Section 868 say that clauses in contracts "providing for adjustment by arbitration or appraisement" should not preclude a suit on the contract; and as the word "appraisement" was not used the court cannot supply the ommission, or rule that the word "adjustment" supplied it. [Distinguishing Young v. Insurance Co., 269 Mo. 1, and disapproving of the expression therein to the effect that Sec. 899, R. S. 1899, and the Act of 1909, construed together, indicated a legislative purpose to render void provisions to enforce "arbitration or settlement by means of appraisers under insurance policies."]

Held, by GRAVES, J., dissenting, with whom WOODSON, J., concurs, that "adjustment by arbitration," as used in Section 868, Revised Statutes 1909, was, in the legislative mind, adjustment by appraisal, or by any other means which hampered the right to go into a court of justice, and the statute was meant to strike out of all contracts all provisions therein which would deny to the parties thereto a right to sue thereon.

6. **STATUTES: Interpretation: Conjectured Purpose: Omissions.** The legislative purpose in passing a law is not to be conjectured, but must be ascertained from the act itself. The agreements the legislators meant to strike at must be determined by what they said, and is not to be surmised, as a probable intention. The courts cannot supply words which, they feel sure, were intended to be included, but by oversight were omitted.

Appeal from Jackson Circuit Court.—*Hon. Harris Robinson*, Judge.

REVERSED AND REMANDED.

*C. C. Crow* for appellant.

(1) Sec. 868, R. S. 1909, enacted in 1909, Laws 1909, p. 347, as construed in the Young case, is in direct conflict with Art. II, Sec. 30, Constitution of Missouri, and

XIV. Amendment of U. S. Constitution. If the statute is to be construed as stated in the case of Young v. Insurance Company, 269 Mo. 1, the plaintiffs and defendant are absolutely prohibited from entering into an agreement or a contract by which the amount of loss, if any, under the policy sued on, could be ascertained by appraisement, and it is, and at all times has been, the law that parties have a constitutional right to enter into contracts of this character. Such a contract does not come within the police power of the State. Adinoln v. Hazlett, 242 Pa. 25; State v. Missouri T. & T. Co., 181 Mo. 536; State v. Loomis, 115 Mo. 307; State v. Jule, 129 Mo. 337. To contract is a property right. Hickman v. Mitchell, 172 Fed. 963; Mathews v. Peo, 202 Ill. 389. (2) This court in the case of Young v. Insurance Company, 269 Mo. 1, has something to say about the construction of this statute, but every word with reference to the construction of the statute is *obiter*. The statute expressly provides in terms that cannot be mistaken, against arbitration, and reads: "providing for an adjustment by arbitration;" while the wording of the contract in this case is appraisement of the amount of the loss. Arbitration settles the case and adjudicates the law and the facts, but appraisement merely refers to the amount to be ascertained by appraisement of an unliquidated claim. Stevens v. Fire Insurance Company, 120 Mo. App. 103. On the question of *obiter,* see, State v. Railroad Co., 242 Mo. 359. "Adjustment by arbitration" cannot apply to a contract providing for ascertaining the amount of an unliquidated claim by appraisement, and we assume that no such ruling would have been made had the question been for decision. Zallee v. Ins. Co., 44 Mo. 530; 5 Corpus Juris, sec. 4, p. 17; Garret v. Macy, 10 Mo. 161. (3) The court erred in giving plaintiffs' instruction 5. Mr. A. B. Harris, agent for defendant, wrote a letter to plaintiffs, after many efforts had been made to settle with them, in which letter he stated that the amount demanded in proofs of loss was grossly excessive, and demanded an ap-

praisement under the terms of the policy. This letter was introduced in evidence by the plaintiffs, making the records show a specific demand for an appraisal of the amount of loss, and this letter was introduced in evidence without any qualifications and without objection. Afterwards, defendant offered in evidence the answer of plaintiffs to the letter written by Mr. Harris, refusing to appraise and to which letter plaintiffs interposed vigorous objections and the court admitted the letter in evidence, but at the same time limited its effect to the question as to vexatious delay. This instruction was clearly erroneous, because the plaintiffs having introduced the first letter without qualifications, could not object to the second letter in response thereto and have the effect thereof qualified. (4) The court erred in refusing to give, at the request of defendant, Instruction 1. This instruction was requested in pursuance to our theory that as construed in the Young case, the statute is unconstitutional and void, and further that the Supreme Court had expressed an *obiter* opinion that the clause of our policy providing for appraisement was void, or at least voidable at the election of the plaintiffs, and on the further theory that the plaintiffs having introduced testimony showing a demand for an appraisal under the terms of the policy, and there being no showing that the demand was complied with, but distinct showing that plaintiffs refused to appraise, the issue was before the court whether the statute is constitutional or not, and even if the statute is constitutional, then even though the construction placed on the statute be adopted that was placed upon it in the Young case, the instruction was still proper because plaintiffs made the issue and waived any objection they might have thereto.

*Xenophon P. Wilfley, William S. Hogsett* and *Murat Boyle, amici curiae.*

Section 868. R. S. 1909, relating to agreements providing for an adjustment by arbitration, does not nulli-

Dworkin v. Caledonian Ins. Co.

fy the appraisal clause in the policy, providing for the ascertainment of the amount of loss by an appraisal, (1) The statute does not use the term "appraisal," but is limited expressly to "arbitration." The policy does not use the term "arbitration," but provides only for an "appraisal.". (2) There is a wide difference between "appraisal" and "arbitration." Zallee v. Laclede Ins. Co., 44 Mo. 530; Harmon v. Ins. Co., 170 Mo. App. 309; Paint Co. v. Ins. Co., 165 Mo. App. 30; Pierce Loan Co. v. Ins. Co.; 200 S. W. 120; Non-Royalty Shoe Co. v. Phoenix Assurance Co., 178 S. W. 246; Fleming v. Phoenix Assurance Co., 75 Hun, 530, 27 N. Y. S. 488; Ins. Co. v. Ries, 80 Ohio St. 272; Martin v. Ins. Co., 64 N. Y. S. 873; Brink & Mehlen v. Ins. Co., 5 Robertson (N. Y.) 104; American Steel Co. v. Ins. Co., 187 Fed. 730; Sholz v. Mills, 176 Mo. App. 352; Holmes v. Sheppard, 49 Mo. 600; Yeatman v. Clemens, 6 Mo. App. 210; Curry v. Lackey, 35 Mo. 389; Garred v. Macey, 10 Mo. 161; Leonard v. Cox, 64 Mo. 32; Toledo v. Zenith Trans. Co., 184 Fed. 391; The Glencairn, 78 Fed. 379; Railway v. Moore, 64 Pa. 91; Sebree v. Board of Education, 254 Ill. 438, 446; M. E. Church v. Seitz, 74 Cal. 287; Foster v. Carr, 135 Cal. 83; Willingham v. Veal, 74 Ga. 755; Giles v. Railway, 57 Kan. 70; Norton v. Gale, 95 Ill. 533; Palmer v. Clark, 106 Mass. 389; Rochester v. Whitehouse, 15 N. H. 468; Hale v. Handy, 26 N. H. 216; Atkinson v. Whitney, 67 Miss. 655; Noble v. Grandin, 125 Mich. 383; Birdsall v. Ayres, 21 N. Y. Supp. 896; Garr v. Gomez, 9 Wend. 649; Bierly v. Williams, 32 Va. (5 Leigh) 700; Turner v. Railway, 132 N. Y. Supp. 418; Kelly v. Crawford, 5 Wall. 786; Stose v. Heissler, 120 Ill. 433; Keiser v. Berks County, 253 Pa. 167; Wurster v. Armfield, 175 N. Y. 256; Thompson v. Newman, 171 Pac. (Cal.) 982; Omaha Water Co. v. Omaha, 162 Fed. 225; 5 Corpus Juris, 17. (3) If the words of a statute are plain and unambiguous it is not within the province of a court to resort to other means of interpretation than the words themselves. Railway v. Clark, 53 Mo. 216; State

v. Mills, 161 Mo. App. 185; State v. Jaeger, 157 Mo. App. 340; Koch v. Bridges, 45 Miss. 247; U. S. v. Hartwell, 6 Wall. 396; Scott v. Reed, 10 Pet. 527; People v. Sands, 102 Cal. 16; McCay v. Railway, 75 Conn. 608; Gilbert v. Dutruit, 91 Wis. 665; Siegel v. Swartz, 117 Fed. 13; Lemonius v. Mayer, 71 Miss. 552; Rosen Plaenter v. Roessels, 54 N. Y. 262; Farrell Foundry v. Dart, 26 Conn. 382; Woodbury v. Berry, 18 Ohio St. 462; Douglas v. Freeholders, 38 N. J. L. 214. (4) Even if the court believes that the Legislature intended something not expressed by the act, it cannot depart from the language of the act if free from ambiguity. Henry County v. Evans, 97 Mo. 55; Gregory v. Kansas City, 244 Mo. 552; State ex rel. v. Board of Curators, 268 Mo. 608; Drainage District v. Winkelmeyer, 212 S. W. 895; Kehr v. Columbia, 136 Mo. App. 329; Smith v. State of Maryland, 66 Md. 215; Woodbury v. Berry, 18 Ohio St. 456; Johnson v. Railway, 49 N. Y. 462; Broadbury v. Wagenhorst, 54 Pa. St. 182; Alexander v. Worthington, 5 Md. 471; United States v. Ragsdale, Fed. Cas. No. 16113. (5) Technical words, and words which have acquired a peculiar and appropriate meaning in the law, must be interpreted in accordance with their technical import. Sec. 8057, R. S. 1909; Patchin v. Bousack, 52 Mo. 433; Ex parte Bethurum, 66 Mo. 548; Wilson v. County, 132 Mo. 387; State v. Clipper, 142 Mo. 474. (6) "Arbitration" and "appraisal" have been rigidly distinguished by the courts, and each term has been given a technical meaning, and a peculiar and appropriate meaning in the law; and it is therefore beyond the province of the court to construe the one term to include the other. Authorities, supra. (7) At the time Section 868 was enacted this court had clearly defined the difference between "arbitration" and "appraisal" in numerous decisions. The Legislature presumably knew the distinction between the terms as this court had defined them, and presumably used the term "arbitration" advisedly, and did not intend thereby to mean "appraisal." (8) Compliance by the assured

with the company's demand for an appraisal is a condition precedent to the institution of suit upon the policy. Non-Royalty Shoe Co. v. Ins. Co., 178 S. W. 253; Stevens v. Ins. Co., 120 Mo. App. 104; Gragg v. Ins. Co., 140 Mo. App. 685; Gragg v. Ins. Co., 132 Mo. App. 405; James v. Ins. Co., 135 Mo. App. 247; Carr v. Ins. Co., 104 Mo. App. 502; Fowble v. Ins. Co., 106 Mo. App. 502; Murphy v. Ins. Co.. 61 Mo. App. 323; McNees v. Ins. Co., 61 Mo. App. 335; McNees v. Ins. Co., 69 Mo. App. 132; Murphy v. Ins. Co., 70 Mo. App. 78; Hooker v. Ins. Co., 69 Mo. App. 141; Dantel v. Ins. Co., 65 Mo. App. 44; Vining v. Ins. Co., 89 Mo. App. 311. (9) The appraisal clause is a valid agreement which does not tend to oust the courts of jurisdiction, as it merely provides for an ascertainment of the amount of the loss, leaving all other questions to be judicially determined. Hamilton v. Ins. Co., 136 U. S. 242; Graham v. Silberman, 75 Ohio St. 374, 15 L. R. A. (N. S.) 1055; Western Assurance Co. v. Hall, 112 Ala. 318; Hall v. Ins. Co., 57 Conn. 105; Service Co. v. Ins. Co., 171 Mass. 433; Grady v. Ins. Co., 27 R. I. 435; Gasser v. Sun Fire Office, 42 Minn. 315; Chapman v. Ins. Co., 89 Wis. 572; Ins. Co. v. Connihan, 63 Ohio St. 258; Ins. Co. v. Craub, 83 Md. 524; Carroll v. Ins. Co., 72 Cal. 297; Ins. Co. v. Clancy, 71 Tex. 5; Lumber Co. v. Ins. Co., 80 Mich. 116; Wolf v. Ins. Co., 50 N. J. L. 453; Richards on Insurance (3 Ed.), pp. 420, 421; 4 Cooley's Briefs, p. 3606.

*George Halpin* and *Bruce Barnett* for respondents.

(1) The policy provision that in event of failure to agree upon the amount of the loss, the same shall be ascertained by appraisement, is void. R. S. 1909, sec. 868; Young v. Ins. Co., 269 Mo. 1. (2) The section is leveled against the policy provision in question for the reasons: (a) The statute employs the words, "adjustment by arbitration," which clearly embraces a provision for adjustment of dispute as to the amount of liability,

where liability is conceded as in this case, inasmuch as the word "adjustment," in its original and most commonly used sense, refers primarily to the ascertainment of the amount of liability rather than to the question as to whether any liability exists and most commonly and primarily to the ascertainment of the amount of losses covered by insurance, the word being one originally applied to ascertainment of the amount of losses under marine insurance policies. Washington Co. v. Ry. Co., 58 Mo. 372; Whipple Trustee v. Fire Ins. Co., 11 R. I. 139; State v. Staub, 61 Conn. 568; Baxter v. State, 9 Wis. 37; State ex rel. Sayre v. Moore, 40 Neb. 854, 25 L. R. A. 774; Willoughby v. Ger. Ins. Co., 68 Minn. 375; First Nat. Bank v. Fire Assurance Co., 64 Minn. 100. (b) While the policy provides that the loss shall "be ascertained" by appraisers and umpire, it is clear that it is not a mere ascertainment of amount of loss that is provided for, but an arbitration, because the policy provides that the loss shall be so ascertained only "in the event of disagreement as to the amount of the loss." The ancient distinction between an arbitration and an appraisement or ascertainment of damages or amount of loss is bottomed upon the proposition that ordinarily there is no disagreement or dispute between the parties where a matter is submitted to ascertainment of amount by appraisement; ordinarily such means of ascertainment as to amount is adopted upon the theory that the parties are not informed as to the amount and adopt the appraisement as a means of ascertainment, but where the parties do not assume toward each other the attitude of ignorance as to the amount, but each takes a position and disagreement or dispute arises, the so-called ascertainment or appraisement then becomes a matter of the settlement of a dispute, which is the essential characteristic of an arbitration. M. K. & T. Ry. Co. v. Elliott, 56 Fed. 774; Curry v. Lackey, 35 Mo. 394; Russell on Arbitration (3 Ed.), p. 43; Morse on Arbitration & Award, p. 40. (3) This court has construed this identical statute as ap-

plicable to this identical policy provision but appellant attacks the decision as being an *obiter dictum,* to which we reply that there has been many a rational *obiter dictum* and that the reasoning and decision of this court upon the question has been most sound. Young v. Ins. Co., 269 Mo. 1. "Arbitration" and "appraisal" are used interchangeably and without difference of meaning. Sebree v. Board of Education, 254 Ill. 438. (4) Under an ancient doctrine of the common law "it is settled that a provision or agreement in an executory contract, that any dispute which may arise thereunder shall be submitted to arbitration, will not, in the language of the authorities, 'oust the courts of their jurisdiction' or in other words, bar a suit, either at law or in equity. Such an agreement is said to be contrary to public policy, a ruling sometimes attributed to the jealousy of the courts, and a desire to repress all attempts to encroach on the exclusiveness of their jurisdiction, and sometimes to an aversion of the courts, from reasons of public policy, to sanction contracts by which the protection which the law affords the individual citizen is renounced." 2 R. C. L. p. 360; Hartford Fire Ins. Co. v. Hon., 66 Neb. 555; Mentz v. Ins. Co., 79 Pa. St. 478; Hostetter v. Pittsburg, 107 Pa. St. 419; Yost v. McKee, 179 Pa. St. 381; Ins. Co. v. Hocking, 115 Pa. St. 407; German-Am. Ins. Co. v. Etherton, 25 Neb. 505; Kenney v. Employees Assn., 35 W. Va. 385; Doyle v. Ins. Co., 94 U. S. 535; Home Ins. Co. v. Morse, 20 Wall. 445. (5) According to well reasoned decisions, the statute is declaratory of the common law and goes no further. Fire Ins. Co. v. Hon., 66 Neb. 555; German-Am. Ins. Co. v. Etherton, 25 Neb. 505; Ins. Co. v. Bachler, 44 Neb. 563; Ger. Ins. Co. v. Eddy, 36 Neb. 461; Home Fire Ins. Co. v. Bean, 42 Neb. 537; Nat. M. Acc. Assn. v. Burr, 44 Neb. 256. The law-making power is not abused or arbitrarily exercised by simply enlarging or extending to a slight degree, the operation of an ancient and well-established principle of public policy. Statutes which limit the right of contract, for the whole

some purposes of public policy, are upheld as constitutional by this and other courts. State v. Mo. Pac. Ry. Co., 242 Mo. 339.

GOODE, J.—This appeal requires us to decide whether the statute, presently to be quoted, annuls the clause in a contract of insurance for the ascertainment by appraisement of the amount of the damage done by a fire to the property insured if the insured and the company could not agree as to the amount of the loss. The policy is not set out in full in the record, and we must get at the intention of the parties to it by what is before us, part of which we abridge and copy a part.

The policy provided regarding a loss by fire, that it should be ascertained or estimated according to the cash value of the property consumed or damaged, with a proper deduction for depreciation; that the amount of the loss should not exceed what it would cost the company to repair or replace the property with material of like kind and quality, that the estimate of the damages should be made by the insured and the company, and if they should differ, by appraisers; that the amount of the loss having been thus ascertained, it should be payable sixty days after the estimate and satisfactory proof of the loss had been received by the company; but that the company should have the option "to take all, or any part, of the articles at such ascertained or appraised value," or to repair or replace what were lost or damaged, with orders of like kind and quality, on giving notice of the intention to do so within thirty days after proof of loss was received. This clause follows those terms:

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and

damage. and. failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire.

The policy covered a stock of merchandise and also the furniture and fixtures in the storeroom. There was a policy written by another company covering the same property, and the defendant is only· liable for one-half of the loss.

The first count of the petition was for the loss on the merchandise, which plaintiffs alleged was in excess of $2400, that being the total amount of insurance on the stock, wherefore they asked judgment against the defendant for $1200. In the second count the loss on the furniture and fixtures was alleged to be. in excess of $600, or the total insurance on the property, and judgment was demanded against the defendant for $300.

I. The only dispute between the parties was regarding the amount of the loss, and to have this ascertained by the method provided in the policy the company demanded an appraisement, which demand, for the purpose of this case, we may say was refused by the plaintiffs. One of the instructions to the jury was "that the plaintiffs were not required to enter into an appraisal with the defendant as to the amount of the loss." The full amount of damages prayed for, in each count was assessed by the jury, and judgment having been entered on the verdict, this apppeal was taken.

The statute to be interpreted is Section 868 and is contained in the revision under the title "Arbitration," and in the Session Laws of 1909 under the title "Contracts and Promises," it having been enacted as an amendment to Chapter 10, Revised Statutes 1899, relating to Contracts and Promises, by adding thereto "a new section to be known as Section 899a." [R.

S. 1909, sec. 868; Laws 1909, p. 347.]   As found in the Session Laws, omitting the title, the enactment reads as follows:

"Section 1.   Contract to arbitrate not to preclude filing of suit.

*Be it enacted by the General Assembly of the State of Missouri, as follows:*

"Section 1.   *Contract to arbitrate not to preclude fling of suit.*—That Chapter 10 of the Revised Statutes of Missouri, 1899, relating to contracts and promises, be and the same is hereby amended by adding thereto a new section, to be known as Section 899a, said section to read as follows:   Section 899a.   Any contract or agreement hereafter entered into containing any clause or provision providing for an adjustment by arbitration shall not preclude any party or beneficiary under such contract or agreement from instituting suit or other legal action on such contract at any time, and the compliance with such clause or provision shall not be a condition precedent to the right to bring or recover in such action.

"Approved June 14, 1909."

The defendant contends the statute does not operate to annul a stipulation in an insurance policy that, in case the parties do not agree on the amount of the loss, it shall be estimated by two appraisers and an umpire.   In support of this position it is argued the statute was intended only to annul a stipulation in a contract for an *arbitration*; which is a method of settling controversies so long in use that the word "arbitration" has acquired a settled technical meaning different from a mere appraisement or estimate of losses and value—in short, that an appraisement is not an arbitration.

Agreements for the two proceedings have been regarded by the courts well nigh universally as agreements for separate and distinct proceedings, and this for various reasons.   Sometimes it has been pointed out that an agreement for an arbitration implies a con-

troversy between the parties at the time of the sub-
mission, which is to be the subject-matter of the arbi-
tration; whereas a stipulation for an appraisement of
values does not presuppose a controversy. [Garred v.
Macey, 10 Mo. 161, 164; Curry v. Lackey, 35 Mo. 389,
394.] No one would say a contract between two persons
which contemplated the fixing by a third person of the
value of property or the amount of the damages suffered
by a breach of the contract, without regard to whether
the parties might differ on the question, would consti-
tute an agreement to arbitrate. For example, if the
parties to a lease should stipulate, as has often hap-
pened, that at the end of a given period the future
rental should be a certain per cent of the value of the
leasehold, to be determined by some one else. [Holmes
v. Shepard, 49 Mo. 600; Sholz v. Mills, 176 Mo. App. 352.]
The policy we are dealing with looked to an appraise-
ment only in the contingency of a controversy arising
between the parties over the amount of a loss, thus carry-
ing into their stipulation one essential element of an
arbitration.

But there have been many cases in which the courts
held there was not an agreement to arbitrate, although,
as in this case, the stipulation for an appraisal was to
come into play only in case the parties disagreed about
values or the amount of a loss. [Paint Co. v. Aetna
Ins. Co., 165 Mo. App. 30; Harmon v. Ins. Co., 170
Mo. App. 309; Non-Royalty Shoe Co. v. Phoenix As-
surance Co., 178 S. W. 246, 210 S. W. 37.]

It has been held, too, that an appraisal of values
or losses does not amount to an arbitration, because it
leaves the question of ultimate liability under the con-
tract open, and therefore does not oust the jurisdiction of
the court. [Methodist Episcopal Church v. Seitz, 74
Cal. 287, 291; Guild v. Railroad Co., 57 Kan. 70;
Hamilton v. Ins. Co., 136 U. S. 242, 255.] But when
the only dispute about a party's liability is as to the
amount he ought to pay, which was the fact in the pres-

ent case, an agreement to determine it by appraisers, if enforced, does operate to take away from the courts the decision of a controversy; and the distinction last mentioned is not valid in such a case, and the validity of the agreement will depend on whether the rule of public policy which renders an agreement to arbitrate not binding, ought to be extended to one for an appraisal of an amount in dispute.

Again it has been held an appraisal was not an arbitration or an agreement for an appraisal equivalent to an agreement to arbitrate, because the appraisers appointed by the respective parties were their agents instead of impartial judges; but that would not often be true. [Bottomly v. Ambler, 38 L. T. (N. S.) 545.]

The two proceedings have been distinguished by the fact that an appraisal settles a subsidiary and incidental matter and not the main controversy. [Black v. Rogers, 75 Mo. 441, 449; Noble v. Grandin, 125 Mich. 383; Garr v. Gomez, 9 Wend. 649.] But in the case under examination the amount of the loss is the substance of the controversy between the parties and not a subsidiary or incidental matter.

In our opinion the fundamental difference between the two proceedings lies in the procedure to be followed, and the effect of the findings. [Sebree v. Board of Education, 254 Ill. 438, 453.] An agreement to arbitrate is really an agreement between parties who are in a controversy, or look forward to the possibility of being in one, to substitute a tribunal other than the courts of the land to determine their rights. [Bennett's Admr. v. Russell, 34 Mo. 524, 528; Green Ry. Co. v. Moore, 64 Pa. 79; Gordon v. United States, 7 Wall. 188; Boyden v. Lamb, 152 Mass. 416.] Arbitrators, like a judicial tribunal, must give notice to the parties of the time and place of the hearing of the controversy, and must listen to and decide upon the evidence offered by the parties; and the original cause of action becomes merged in the award, which may be declared upon at common law as a new demand, or, under our statute.

judgment may be entered upon it by the court designated. [1 Bouvier's Law Dict. (Rawles, 3 Rev.) p. 235; Morse on Arbitration and Award, p. 490; Sadler v. Olmstead, 79 Iowa, 121; Averill v. Buckingham, 36 Conn. 359; R. S. 1909, sec. 875.] In the case of a simple appraisal of values or the amount of a loss, the appraisers, if they wish, may hear what others have to say on the question they are to determine but unless the reference so provides, they are not bound to take testimony and may decide from their own knowledge or opinion. [James v. Schroeder, 61 Mich. 28; Royal Ins. Co. v. Ries, 80 Ohio St. 272; Palmer v. Clark, 106 Mass. 389.] Neither does their award create a new cause of action, but the liability of one party to the other is still upon the contract. [Brink v. New Amsterdam Fire Ins. Co., 5 Robertson (N. Y.) 104, 123.]

These differences have been pointed out and acted upon in litigation of different kinds, perhaps more frequently in actions on insurance policies than in any other class of cases. We have cited above several Missouri decisions given upon the difference between an arbitration and an appraisal of loss, and cite the following similar cases from other jurisdictions, some of which determine the effect of a stipulation identical with the one before us: American Steel Co. v. Ins. Co., 187 Fed. 730; Fleming v. Phoenix Assur. Co., 75 Hun, 530, 27 N. Y. Supp. 488; Royal Ins. Co. v. Ries, 80 Ohio St. 272; Brink v. Ins. Co., 5 Robertson (N. Y.) l. c. 109; Morgan v. Ins. Co., 64 N. Y. Supp. 873; Hamilton v. Ins. Co., 136 U. S. 242.

Nowhere has the distinction been more recognized and acted upon than in this State from an early day. [Zallee v. Ins. Co., 44 Mo. 530.] In the cited case, which is a leading one in the country, the insurance company and the person insured disagreed about the amount of a loss under a policy, and pursuant to its provisions agreed in writing on a board of appraisers to determine the amount, but the plaintiff ignored the award or estimate of the board and filed an action. His contention

was the valuation was void because the appraisers were not sworn, as they must have been if there was an arbitration. This court held the submission was not to an arbitration, but to an appraisal, which was something less. The opinion commented on the fact that the award of the appraisers would not of itself afford a cause of action in court, but would leave the prior cause intact, and would be only proof at a trial of the amount of the damages done by the fire. Stress was laid, too, on the circumstance that there was no controversy between the parties when the agreement in the policy for an appraisement was made. The court held the persons to whom the amount of the loss was referred acted as appraisers, and not as arbitrators; that the reference to them was not a submission to arbitration in the legal sense, but a just and reasonable mode of fixing values— the values of the damaged goods before and after the fire, the difference representing the amount of loss. The court referred to the cases of Garred v. Macey and Curry v. Lackey, supra, and said they clearly distinguished between the "submission for arbitration for the purposes of an appraisal and the submission to arbitration for the purpose of settling and extinguishing causes of action. Only the latter are technically and strictly arbitrations." The decision in the Zallee case has been accepted as sound and followed by the courts of this State to this day, as the cases we have cited show.

In Harmon v. Ins. Co., ELLISON, J., pointed out the radical differences between an appraisal and an arbitration, namely: appraisers may act on their own judgment without a hearing, whereas arbitrators must act upon testimony; and the award of the latter extinguishes the original cause of action and becomes a new cause, whereas, an appraisal leaves the right of action on the contract unimpaired. Similar views were expressed by the courts of most of the States of the Union and by the Supreme Court of the United States in the cases cited supra. The same distinction has been drawn in litigation involving a controversy identical in prin-

ciple with the one at bar, but over contracts not relating
to insurance. [Holmes v. Shepard, 49 Mo. 600; Sholz
v. Mills, 176 Mo. App. 352; Railway v. Moore, 64 Pa.
l. c. 91; Sebree v. Board of Education, 254 Ill. 438;
Willingham v. Veal, 74 Ga. 755; Bierly v. Williams,
5 Leigh (Va.) 700; Wurster v. Armfield, 175 N. Y.
256; Thompson v. Newman, 171 Pac. 982; The Glen-
cairn, 78 Fed. 379; Omaha Water Co. v. City of Omaha,
147 Fed. 1.] The English courts have recognized the
distinction; and, in fact, the weight of authority is
heavy in favor of the proposition that an agreement to
submit to appraisers the amount of a loss or the value
of property, even if the parties have disagreed about
the matter, does not provide for an arbitration. We
consider the principle on which the decisions are found-
ed sound, for the method by which the conclusion of ap-
praisers may be reached and the procedure which arbi-
trators must follow make the two proceedings unlike
both in form and effect.

This case calls for a decision of the point according
to the intention of the parties, and the policy, when in-
terpreted according to the natural and legal import of
its terms, suggests no intention to submit the deter-
mination of the amount of a loss, should one occur, to
either a common-law or a statutory arbitration. Mani-
festly the latter form was not contemplated, for none
of the details of procedure presented by the statutes on
the subject are required to be observed; for example,
a submission in writing, or agreement that some court
may enter judgment on the award, or that the arbi-
trators shall be sworn, etc. [See R. S. 1909, Chap. 7.]

Neither are the terms of the policy suggestive of
a common-law submission. Notice to the parties of a
hearing is not provided for, or the taking of testimony,
or that the award shall extinguish liability in the policy;
and plainly this liability was to continue. That the ap-
praisers were free to act on their own opinion without
the help of evidence, appears from the provision that
the umpire was to decide only when the appraisers dis-

agreed. If witnesses were to be heard, then, by this arrangement, they would be heard first by the two appraisers, and if they did not concur, by the umpire; a plan so complicated that it is unreasonable to suppose the parties to the contract meant to prescribe it. All the details of the scheme indicate that nothing more was intended than what the words used denoted, namely: an estimate according to the opinion of two appraisers, and of an umpire if they differed. an opinion reached either from a personal examination alone or an examination plus other evidence as they might prefer.

The parties stipulated for an appraisal in the event of a fire and their inability to concur as to the amount of the loss, and so stipulated for two reasons: first, to have the amount ascertained in that mode and thereby dispense with other evidence on the question if there should be a law suit; a way preferred by them and apparently simple and easy to use; second, the company was accorded the option to take all or any part of the damaged articles at their values when sound, as fixed by the appraisers. This proviso was an integral part of the policy and must be considered part of the consideration for which the company entered into it.

II.   What has been said makes clear, we think, the distinction between a stipulation for an appraisal and an agreement to arbitrate, but it does not answer fully the question of whether the statute which undertakes to annul any clause or provision in a contract for "an adjustment by arbitration" applies to the stipulation in the present case. We say "annul," because the effect of the statute is to allow a party to a contract with such a clause in it, to sue on the contract and maintain the action without complying with the condition. It is to be observed that this statute is not leveled at contracts of insurance only, but at all contracts containing the forbidden stipulation. It is wide-ranging, for there are many agreements of the kind in the world of business which relate to other matters than insurance.

The argument that a particular interpretation of a statute will work inconvenience, is not forcible, but may be accorded some influence when the meaning of a law is uncertain, for presumably the Legislature intended to remedy instead of entail mischief. In a case like the present one, an eminent judge (Lord CAMPBELL) decleared concerning a contract for the appraisal, or "arbitration" as the policy said, of the loss under a policy of marine insurance, that instead of the plan being contrary to public policy, "it would be a most inexpedient encroachment upon the liberty of the subject if he were not allowed to enter into such a contract." And the House of Lords, after much consideration of the question, decided such an agreement was not one for an arbitration in the proper sense. [Scott v. Avery, 5 H. L. Cases, *pp. 811, 851.]

The Supreme Court of California said that to apply the rules regulating arbitrations to all the contracts in which parties regulate their actions by the determination of third persons, would "interfere with the ordinary transactions of mankind and put unnecessary clogs upon business." [M. E. Church v. Seitz, 74 Cal. l. c. 292.]

But the principal rule of interpretation to be applied to the act in question, is prescribed by our statutes, to-wit: "Technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import;" that is to say, in getting at the intention of the Legislature in enacting a law which contains a technical expression, we must presume the expression was used in its technical sense, unless there is something in the context to indicate that it was not. [R. S. 1909, sec. 8057.] In truth, the statute that technical terms "shall be understood in their technical import," on its face is mandatory; but it has been held to mean, and rightly so, that the context of the word may be regarded, and if it shows another than a technical sense was intended, the other meaning will be adopted. [Ex parte Bethurum, 66 Mo.

545, 548; State v. Delay, 93 Mo. 98.] If the word "arbitration" was used in the statute in its legal sense and as a term or art, then beyond a doubt, the stipulation for an appraisement was not one for an arbitration, and so was not affected by the statute.

Is there anything in the statute which requires us to accept other than the legal meaning of the word "arbitration?" For the plaintiff the argument is that the phrase "adjustment by arbitration," shows another meaning was intended. The word "adjustment" is not a technical term. It means to fit, arrange, settle, equalize, and perhaps has other meanings according to the subject-matter where it is used. We are most familiar with the use of the word in connection with claims for insurance, but there are various other adjustments; for example, the values of leaseholds, of property to be sold at another person's valuation, etc. [Curry v. Lackey, 35 Mo. 389.] That the Legislature did not have in mind in enacting this statute only the adjustments of losses under polices of insurance, is manifest from the fact that it applies to all kinds of contracts. Moreover as provided in the Session Laws it has this line of clear meaning: "Section 1. Contract to arbitrate not to preclude filing of suit." As the difference between an agreement for an arbitration and an agreement for an appraisement had been recognized by the courts of this State many years prior to the enactment of the section in question, we must presume the distinction was known to the members of the Legislature and that they passed the law with it in mind. If they had meant the statute to relate to contracts stipulating for appraisements, it is probable they would have said "adjustment by arbitration or appraisement," instead of saying "adjustment by arbitration." We find nothing in the wording of the act which shows an intention to employ the word "arbitration" in any other meaning that its legal one, and feel constrained to give it the latter meaning.

In a former opinion of this court where the statute was discussed, but in an *obiter* way because the policy

therein involved was issued prior to its enactment, it was remarked that the purpose of the Legislature was to strike at contracts like the one before us. The opinion called attention to the fact that Section 899 of the chapter on contracts provided that all parties to a contract which directly or indirectly tended to limit the time in which an action might be instituted, should be null and void (R. S. 1899, sec. 899); and that the statute in hand was designated by the Legislature as Section 899a and naturally, in the compilation of the Revised Statutes, would have followed Section 899. It was argued that the two sections construed together indicated a purpose on the part of the Legislature to render void provisions to enforce "arbitration or settlement by means of appraisers under insurance policies." [Young v. Ins. Co., 269 Mo. 1.] One of those sections was intended to annul clauses in contracts limiting the time for actions on them and to make the general limitation period, fixed by statute, control. The other section (899a) was intended to annul clauses making "adjustment by arbitration" a condition precedent to the right to bring and maintain an action. The two sections were enacted for different purposes and are unrelated except that both affect actions on contracts.

The legislative purpose in passing the law under examination is not to be conjectured, but must be ascertained from the act itself. The agreements the legislators meant to strike at must be determined from what they said, and not surmised, as a probable intention. This court has declared: "It is our duty merely to interpret it (a statute) exactly as made by the legislative department—we cannot properly add to it a meaning not intended by its terms." [Henry & Coatsworth Co. v. Evans, 97 Mo. l. c. 55.] The application of this rule is striking in what is called a *casus omissus*. The court may feel sure the Legislature meant to include something which by oversight was omitted, yet cannot supply it. [Kehr v. Columbia, 136 Mo. App. l. c. 329; Smith v. State, 66 Md. 215; Woodbury v. Berry, 18 Ohio,

456.] In the Maryland case it was said that even when a court is convinced the Legislature really meant and intended something not expressed by the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of language. If the statute we are considering was meant to embrace an appraisement within its effect, then apt words for that purpose were not employed, and an amendment is needed. In Young v. Ins. Co. the court had no occasion to examine critically the authorities dealing with the distinction between appraisement and arbitration, or their bearing upon the interpretation of the statute under review.

At common law parties have the right to have losses and values affecting liability under a contract appraised by third persons selected by them. It is a right which tends to prevent litigation, and a statute asserted to be in derogation of it should be construed strictly. As the language of the act before us naturally denotes an arbitration in the legal sense, it seems sound to confine its effect to that kind of a proceeding.

Judgment is reversed and the cause remanded.

*Walker, C. J., Blair* and *Williamson, JJ.,* concur; *Graves, J.,* dissents in separate opinion, in which *Woodson, J.,* concurs; *Williams, J.,* not sitting.

GRAVES, J. (dissenting).—I dissent in this case for the reason that I do not believe that the Legislature ever intended by the Act of 1909, now Section 868, Revised Statutes 1909, to refer to arbitration in the sense that it is used at the common law or in our statutory law upon arbitration. I tried to point out this in Young v. Insurance Co., 269 Mo. l. c. 14 et seq. It was never enacted as a part of our law upon arbitration, as pointed out in that case. The statute used the term "an adjustment by arbitration," and not the word "arbitration" alone. As I read this statute, taking its connection when passed, the legislative intent was to strike at just such provisions as we have before us in the instant contract. Adjustment by arbitration, in the legislative

mind, was adjustment by appraisal, or any other means which hampered the right to go into a court of justice. The legislative purpose was to give the party to just such contracts as we have before us, the right to sue, irrespective of the fact that somewhere, hidden in a labyrinth of finely printed provisions, there might be one calling for an appraisal. The insured rarely reads or knows what these finely printed provisions of his contract are, and this statute, as well as others which we have, were intended to prevent his acceptance of such a policy from precluding his unfettered right to go to a court of justice.

It may.be that what was said in Young's case, supra, was not absolutely necessary for a decision of that case, but it was written upon the point being specifically made in the brief, as appears from the opinion. But, whether it be *obiter* or not, in my judgment it declares the correct legislative intent of the statute discussed. For this reason I dissent. *Woodson, J.,* concurs in these views.